**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUDY DOE,<br>      individually and as parent and guardian of<br>     her daughter, JANE DOE, and<br>JOHN ROE,<br>     individually and as parent and guardian of<br>     his daughter, JOAN ROE,<br>         *Plaintiffs,*<br><br>     v.<br><br>WINSTON NGUYEN;<br>SAINT ANN'S SCHOOL;<br>VINCENT TOMPKINS, KENYATTE REID,<br>MELISSA KANTOR, and MAUREEN<br>YUSUF-MORALES<br>     in their individual capacities and in their<br>     capacities as officers of Saint Ann's School.<br>         *Defendants.* | Case No. 26-cv-00507<br><br><br><br><br><br>**COMPLAINT AND**<br>**JURY TRIAL DEMAND** |

    *"I have endured so much pain because of your sickening actions. I constantly worry that my peers and people around me have seen the naked photos you disgustingly collected of me…Your actions will scar me for the rest of my life, my trust has been shattered."*

    -- Jane Doe's statement at Winston Nguyen's sentencing

    *"Photos of me as a naked pre-teen will forever be on the internet and accessible to more perverted pedophiles… [M]y image and my self-worth will always be tainted by this…. You ruined my life, broke my ability to trust, and hurt any chance at loving myself. For this I will never forgive you."*

    -- Joan Roe's statement at Winston Nguyen's sentencing

## INTRODUCTION

1.      Saint Ann's School and its leaders made Winston Nguyen a campus celebrity, ignoring everything they knew about his felony conviction, his boundary crossing, and his grooming of children. Nguyen used his position to extract child sexual abuse material—explicit sexual images and videos—from Jane Doe and Joan Roe, thirteen-year-old girls, and then disseminate it on the internet. Nguyen is in prison, but Jane and Joan have not yet gotten justice.

2.      The School and its leaders should have seen this coming. One of the School's senior administrators knew, when she hired Nguyen, that he had been convicted of abusing a caretaker position to manipulate and defraud vulnerable clients. But Saint Ann's did no real due diligence and took no precautions. Violating its own policies, Saint Ann's failed to conduct a background check or any other meaningful vetting before hiring Nguyen. If it had, it would have learned that Nguyen is a serial liar and manipulator.

3.      Saint Ann's leaders made Nguyen their special pet. For nearly four years, the School and its leaders promoted Nguyen and facilitated his unfettered and unsupervised access to children. They covered for Nguyen as he violated school policies and overstepped obvious boundaries: he broke the School's rule on interacting with students over social media; slept at the School; maintained a special "hangout room" where favored students could skip class; bribed students with gifts; took students off campus for meals; and showed up unannounced at students' homes. If Saint Ann's had taken even one of many obvious steps that any reasonable protector of children would have taken to supervise, restrain, or discipline Nguyen, the School could have averted this foreseeable tragedy.

4.      But rather than protecting children, the School and its officials protected Nguyen, hiding his past misdeeds and ongoing misbehavior. When parents, faculty, and students warned

about Nguyen's predatory behavior, Saint Ann's retaliated against the whistleblowers, ostracizing them as "racist," "anti-progressive," and insufficiently committed to "restorative justice." Even when Nguyen released naked pictures of Jane and Joan to the Saint Ann's community, the School did nothing to help the children or to mitigate the harm. To this day, it has never apologized.

5.    While the School stonewalled and silenced whistleblowers, Jane and Joan came forward and told their story to prosecutors. Thanks to them, and despite Saint Ann's intransigence, Nguyen was convicted in state court of a "sexually motivated felony"—use of a child in a sexual performance—and five counts of endangering the welfare of a child. On March 19, 2025, he was sentenced to seven years in prison. When he is released, he must register as a sex offender.

6.    But Saint Ann's and its leaders have not yet been held accountable for recklessly hiring Nguyen; repeatedly empowering him; refusing to supervise him; actively abetting him; and entrusting him with the access and property that he used to perpetrate his crimes. All this was documented by the School's own investigators, the law firm Debevoise & Plimpton LLP, in their damning report—the "Report"—which is appended to and incorporated in this Complaint (Exhibit A).[1]

7.    As Saint Ann's Faculty & Staff Handbook puts it: "Woe to the parent, administrator or student uneasy with a grand experiment."[2] The School's "grand experiment"

---

[1] Helen Cantwell and Arian June, *Report to the Board of Saint Ann's School*, DEBEVOISE & PLIMPTON LLP (Dec. 10, 2024), *available at* https://saintannsny.org/wp-content/uploads/2024/12/Debevoise-Saint-Anns-Key-Findings-12.10.2024-1-1.pdf (hereinafter "Report").

[2] *See* Report, p. 31-32 ("It is hard to imagine a school at which teachers are given more latitude to explore and express their intellectual and artistic vision than Saint Ann's. We thrive on the idiosyncratic and the iconoclastic. Woe to the parent, administrator or student uneasy with a grand experiment." (quoting Saint Ann's Faculty & Staff Handbook)).

here was hiring a convicted predator and turning him loose on thirteen-year-old Jane and Joan. Now Saint Ann's, its leadership, and Nguyen must make Jane, Joan, and their families whole.

## JURISDICTION, VENUE, AND JURY DEMAND

8.      This Court has federal question jurisdiction under 28 U.S.C. § 1331. The suit arises under 18 U.S.C. § 2255 and 15 U.S.C. § 6851, which provide federal causes of action for victims of child sexual exploitation and the nonconsensual disclosure of intimate visual depictions. Jane and Joan were thirteen when Winston Nguyen solicited intimate images and videos from them, and then disclosed those depictions on the internet.

9.      Under 28 U.S.C. § 1367, this Court's supplemental jurisdiction extends to Plaintiffs' New York State and New York City law claims against all Defendants.

10.     Venue is properly lodged in this Court under 28 U.S.C. § 1391(b). Saint Ann's School has its principal place of business in the Eastern District of New York; on information and belief, the individual Defendants other than Winston Nguyen reside in this District; Defendants committed all their tortious acts in this District; and Plaintiffs, who live in Brooklyn, suffered their injuries here.

11.     Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all jury-triable questions raised by this Complaint.

## PARTIES

12.     Defendant Winston Nguyen was an unqualified teacher whom Saint Ann's School hired, promoted, and gave unfettered access to Brooklyn teenagers, including Jane Doe and Joan Roe. Nguyen solicited explicit images of Jane and Joan and then disseminated the images on the internet. After the girls came forward, Nguyen was convicted in Kings County and sentenced to

seven years in prison as a sex offender. Nguyen is now incarcerated at Fishkill Correctional Facility in Beacon, New York.

13.    Saint Ann's School is a wealthy New York corporation with its principal place of business at 129 Pierrepont Street, Brooklyn, New York 11201. Founded in 1965, Saint Ann's holds itself out as an elite private day school catering to children of New York's "wealthy creative class,"[3] serving about 1,000 students from pre-school through 12th grade. The tuition at Saint Ann's can run north of $63,000 per year. In 2024, the School brought in almost $77 million in revenue and held assets worth more than $214 million.

14.    From July 2010 to September 2022, Defendant Vincent Tompkins was the Head of School and a member of the Board of Trustees at Saint Ann's. In that role, he had the ultimate authority to recruit, hire, supervise, and discipline faculty—including Winston Nguyen. Tompkins is sued in his individual capacity and as Head of School and Trustee of Saint Ann's. On information and belief, Tompkins is a resident of Brooklyn, New York.

15.    From October 2022 until today, Defendant Kenyatte Reid has been the Head of School for Saint Ann's and a member of Saint Ann's Board of Trustees. In that role, he has had ultimate authority to recruit, hire, supervise, and discipline faculty—including Winston Nguyen. Reid was Head of School during many of the events described in this Complaint. Reid is sued in his individual capacity and as Head of School and Trustee of Saint Ann's. On information and belief, Reid is a resident of Brooklyn, New York.

16.    Defendant Melissa Kantor had been working at Saint Ann's for over twenty years and was Dean of Faculty when Nguyen was hired. She left sometime in 2024. In her role at Saint

---

[3] Katherine Rosman, *An Elite School and the Criminal It Hired to Teach Math*, N.Y. TIMES (Mar. 25, 2019), https://www.nytimes.com/2024/12/09/nyregion/saint-anns-winston-nguyen-crime.html.

Ann's, she was empowered to recruit, hire, supervise, and discipline faculty, including Winston Nguyen. Kantor was the decisionmaker who failed to properly vet Nguyen's candidacy, and who hired Nguyen and promoted him into the classroom. Kantor is sued in her individual capacity and as a senior leader of Saint Ann's. On information and belief, Kantor is a resident of Brooklyn, New York.

17.      Defendant Maureen Yusuf-Morales was Head of the Upper-Middle School at Saint Ann's when Nguyen was being considered for hire. She left in the summer of 2024. At Saint Ann's, she was empowered to recruit, hire, supervise, and discipline faculty, including Winston Nguyen. Among many other facts showing her liability, Yusuf-Morales was the faculty member who recommended Nguyen as a hire; who deliberately concealed, or was recklessly indifferent to, his past crimes; and who played a key role in bullying and silencing staff and parents who articulated concerns about Nguyen. Yusuf-Morales is sued in her individual capacity and as a senior leader of Saint Ann's. On information and belief, Yusuf-Morales is a resident of Brooklyn, New York.

18.      This Complaint refers to Defendants Tompkins, Reid, Kantor, and Yusuf-Morales collectively as "the School Leaders" or the "Leaders."

19.      Plaintiff Judy Doe is an adult who, at all relevant times, has been and remains a resident of Kings County, New York. She is the parent and natural guardian of Jane Doe. When Jane Doe was thirteen years old and living in Brooklyn, she was victimized by Nguyen's Saint Ann's-enabled sex crimes.

20.      Plaintiff John Roe is an adult who, at all relevant times, has been and remains a resident of Kings County, New York. He is the parent and natural guardian of Joan Roe. When Joan Roe was thirteen years old and living in Brooklyn, she was victimized by Nguyen's Saint Ann's-enabled sex crimes.

6

## FACTS

### *Saint Ann's hiring optimizes for unqualified and unsafe teachers.*

21.     Saint Ann's preaches unconditional trust in teachers. Parents are not even allowed to protect their children. Its ethos glorifies "'the central relationship in the school…between teachers and students'" and requires parents to "'drop [their] kids off at kindergarten and pick them up at graduation.'"[4]

22.     But Saint Ann's routinely hires and retains untrustworthy teachers and administrators, and its intransigence in refusing to supervise its faculty, or even to allow parent engagement and oversight, has repeatedly enabled faculty misconduct. In 2018, for instance, the longtime head of Saint Ann's Middle School resigned in disgrace for hosting alcohol- and marijuana-fueled parties for students at his home.[5] In 2019, outside investigators hired by Saint Ann's concluded that at least six former faculty members had engaged in "'sexual misconduct or serious boundary violations,'" including having sex with students, while employed by Saint Ann's.[6]

23.     Because of incidents like these, Saint Ann's has long known that its policies and practices put students in danger. When unsupervised teachers predictably abuse students, Saint

---

[4] Caitlin Moscatello & James D. Walsh, *How did a Brooklyn Private School Fall for An Accused Predator?*, N.Y. Magazine (Aug. 1, 2024), https://nymag.com/intelligencer/article/saint-anns-winston-nguyen-scandal-snapchat.html.

[5] Selim Algar, *Elite School with History of Inappropriate Conduct Allegations Probing Ex-Staffers*, N.Y. Post (Mar. 22, 2018), https://nypost.com/2018/03/22/elite-school-with-history-of-inappropriate-conduct-allegations-probing-ex-staffers/.

[6] Lisa Ryan, *Elite New York School Finds 6 Former Teachers Engaged in Sexual* Misconduct, The Cut (Mar. 25, 2019), https://www.thecut.com/2019/03/saint-anns-former-teachers-misconduct-investigation.html?.

Ann's verbalizes outrage—but it has taken no meaningful action to reform its hiring and oversight practices.[7]

24.    The Report outlines a systematically deficient hiring process that fails to protect students from unqualified, dangerous people like Winston Nguyen. The Report details the School's practice of hiring candidates—including Nguyen—"with little scrutiny of their public history, including prior writings and social media posts."[8]

25.    Saint Ann's routinely circumvents even its own minimal safeguards. The Report shows that the School has a practice of hiring candidates—including Nguyen—for non-teaching positions and then promoting them into classroom roles with no further scrutiny. That internal "back door" promotion scheme allows Saint Ann's to hire candidates—like Nguyen—who likely would not (or at least should not) survive the more robust scrutiny supposedly being given to teacher candidates.[9]

### *Saint Ann's recruits and hires Winston Nguyen despite his documented history of manipulating vulnerable people in his care.*

26.    Saint Ann's was so eager to burnish its progressive bona fides by hiring Winston Nguyen that it violated its own deficient candidate screening rules.

---

[7] After the 2018 faculty abuses, for instance, Saint Ann's claimed that "[t]o distort the boundaries of the student-teacher relationship is antithetical to our school's most deeply-held values and undermines the foundations of our educational mission." Selim Algar, *Elite School with History of Inappropriate Conduct Allegations Probing Ex-Staffers*, N.Y. POST (Mar. 22, 2018), https://nypost.com/2018/03/22/elite-school-with-history-of-inappropriate-conduct-allegations-probing-ex-staffers/. After Jane and Joan forced Saint Ann's to respond to Nguyen's misconduct, the School mouthed the same empty platitudes: "[Nguyen's conduct is] a deep violation of the trust we extended to him as a member of our community. Our role and responsibility as educators is to create and nurture an environment in which our students are safe and supported at all times, and these alleged actions are antithetical to our work and our mission." Kenyatte Reid et al., *Public Letter from Saint Ann's*, Veracross Portal (June 10, 2024), https://portals.veracross.com/sa/email/8701a8f743ef4591/important-message-from-head-of-school-and-incoming-board-chair.

[8] Report, p. 25.

[9] Report, p. 25.

27.     On or around August 6, 2020, Maureen Yusuf-Morales, the Head of Saint Ann's Upper Middle School, recommended that the School hire her "long time friend" Nguyen.[10] Saint Ann's immediately, and without any meaningful questioning or scrutiny, hired Nguyen as a classroom aide.

28.     During that slapdash hiring process, Yusuf-Morales told Saint Ann's that Nguyen had recently been convicted—but she misleadingly minimized his conviction as a "financial crime," and she claimed that Nguyen had since been "rehabilitated."[11] In fact, Nguyen had pled guilty to three felonies: grand larceny in the second degree, scheme to defraud in the first degree, and—most troublingly—endangering the welfare of an incompetent or physically disabled person in the first degree. He lied to, defrauded, and stole from disabled people who had hired him as their caregiver.[12]

29.     Saint Ann's took Yusuf-Morales's misrepresentations at face value, hiring Nguyen without the due diligence its own policies required and over the strong objections of at least one Saint Ann's employee. In hiring Nguyen, the School violated its own policy requiring all prospective employees to complete a background check "prior to their start date."[13] That policy had been in place for at least ten years by the summer of 2020. But Saint Ann's did not complete the required background check for Nguyen before he was hired or before his first day of work on August 24, 2020.

---

[10] Report, p. 7.

[11] Report, p. 8-9.

[12] Rebecca Rosenberg, *Home Aide Stole Elderly Clients' Money for Ballet Tickets, Trips*, N.Y. Post (Aug. 24, 2017), https://nypost.com/2017/08/24/home-aide-stole-elderly-clients-money-for-ballet-tickets-trips/.

[13] Report, p. 23.

30.     In fact, according to the Report, Saint Ann's took no meaningful steps to vet Nguyen before hiring him. Nguyen's resume claimed that he had previously worked at two other prestigious schools: East Harlem Scholars Academy and the Town School.[14] Those claims were lies.[15] But Saint Ann's never contacted anyone at East Harlem Scholars Academy or the Town School before hiring Nguyen.[16]

31.     Nguyen's actual prior employer—the family he exploited in his first round of criminal conduct—surely would have told Saint Ann's not to hire Nguyen.[17] But apparently Saint Ann's never contacted that family—or worse, it did, and it ignored what it learned.

32.     Popular media covered Nguyen's prior convictions, so even a cursory web search would have shown the truth about Nguyen's past.[18] But apparently, Saint Ann's never even Googled Nguyen before hiring him—or it did, but it did not care about his record of taking advantage of vulnerable people.

33.     Saint Ann's has repeatedly lied about its failure to vet Nguyen's background. On June 10, 2024, for example, Saint Ann's falsely represented that "[a]ll of [its] staff undergo comprehensive background checks and every employee's history is given a close and discerning

---

[14] Caitlin Moscatello & James D. Walsh, *How Did a Brooklyn Private School Fall for An Accused Predator?*, N.Y. MAGAZINE (Aug. 1, 2024), https://nymag.com/intelligencer/article/saint-anns-winston-nguyen-scandal-snapchat.html.

[15] *Id.*

[16] Report, p. 9 ("No one at Saint Ann's took any steps to verify the employment or education credentials listed on his resume").

[17] Matt Troutman, *Family of Elderly Couple Ripped Off by Alleged Pervy Private School Teacher, Ex-Jeopardy' Champ Slams His Hire: 'Incredible'*, N.Y. POST (Aug. 1, 2024), https://nypost.com/2024/08/01/us-news/kin-of-couple-ripped-off-by-saint-ann-teacher-winston-nguyen-slams-hire/.

[18] *See, e.g.*, Rebecca Rosenberg, *Home Aide Stole Elderly Clients' Money for Ballet Tickets, Trips*, N.Y. POST (Aug. 24, 2017), https://nypost.com/2017/08/24/home-aide-stole-elderly-clients-money-for-ballet-tickets-trips/.

look to gauge their ability to thrive in and enrich our community."[19] On June 14, 2024, Saint

Ann's falsely represented that it had run its "standard background check process" on Nguyen.[20]

The School's Report gave lie to those claims.

### Saint Ann's and its leaders fast-track Nguyen into position to groom children.

34.     On September 3, 2020, Saint Ann's finally completed its background check. With

the results in hand, Saint Ann's knew it had employed someone with a history of exploiting

vulnerable people. It knew that Yusuf-Morales had either knowingly misrepresented the scope of

Nguyen's criminal conduct or had herself also failed to conduct reasonable due diligence before

referring her close friend for employment.

35.     But the School did nothing. It did not suspend or fire Nguyen. It did not reengage

with a thorough reference check. It apparently did not even confront Nguyen about his criminal

history or Yusuf-Morales about her misrepresentations.

36.     Saint Ann's was preoccupied not with protecting children but with Nguyen's

needs. It worried about putting him in an "awkward position" if students and parents learned

about his criminal past.[21] So the School lied and bullied to conceal its negligence. And, instead

of pumping the brakes, the School did everything it could to facilitate Nguyen's access to

students.

37.     By the end of the fall 2020 semester, Saint Ann's was ready to advance its so-

called "second chance" experiment by making Nguyen a teacher through its "back door"

---

[19] Kenyatte Reid et al., *Public Letter from Saint Ann's*, Veracross Portal (June 10, 2024), https://portals.veracross.com/sa/email/1d4067544faa4f32/update.

[20] *Id*.

[21] Report, p. 12.

promotion process. In early 2021, top administrators—who were among the select few who knew about Nguyen's past—set about "'aggressively' lobbying department chairs to find a position for Nguyen" as a teacher in their department.[22] When department heads were told about Nguyen's past, they had the common sense to refuse. So Saint Ann's knew—from internal, trusted sources—that its continued support of Nguyen was a grave mistake.

38.    The School did not relent, though. It just lied more. As they shopped their predator around, administrators simply stopped telling department heads about Nguyen's past. Eventually, the School Leaders pressured the chair of Saint Ann's math department—whom they did not tell about Nguyen's criminal history—to take Nguyen on as a math teacher for adolescents. Nguyen had no degree in math or education. He had never been a full-time teacher before.

39.    The School was eager, not just willing, to put adolescents at risk. So it deployed a streamlined promotion process. It had Nguyen teach only one sample class before it made his promotion official. The School's own policies required more robust screening procedures when hiring teachers. And, in the promotion process, Saint Ann's did not conduct any additional interview process, background checks, or reference checks.

### Saint Ann's and its leaders aid and abet Nguyen's grooming.

40.    Nguyen's promotion gave him significant authority over, and unsupervised access to, adolescent children. Outside the classroom, Saint Ann's let Nguyen supervise the middle school newspaper and run the School's "identity exploration" club. In these extracurricular activities, Nguyen had unsupervised and informal interactions with a broader range of students

---

[22] *See* Report, p. 11 ("Tompkins and Kantor decided not to disclose Nguyen's history to other individuals at the School because they wanted Nguyen to have a 'second chance'…"); Report, p. 13.

than in his normal classes. Saint Ann's also asked Nguyen to chaperone trips and events, including an all-nighter at the School.

41.     Saint Ann's gave Nguyen—a known manipulator whom it had never vetted—a level of access that it withheld from qualified teachers. The School let Nguyen use its resources to create his own "snack closet" and "candy closet" on School grounds from which he doled out treats to favored students. It let him claim and furnish a spare office as a "hangout space" for his favorites. It regularly let him sleep over at the School, in contravention of policy.

42.     Saint Ann's even entrusted Nguyen with a master key to the School, allowing him to be anywhere at any time. The School normally restricted access to master keys. But it gave Nguyen special treatment. By the time he was arrested, Nguyen had nearly 30 keys to various school offices and storage spaces, and a master key to all classrooms.

43.     As early as October 2020, Nguyen started grooming students. He lavished gifts and special attention on his favorites; breached boundaries on and off campus, including visiting students at home; and, perhaps most troublingly in this context, violated school rules against social media contact between adults and children.

44.     *Gifts and special attention.* With Saint Ann's knowledge, Nguyen would often gift Starbucks drinks, snacks, and other prizes to students. He distributed pencil cases full of candy, often during classes. He took favored students off campus to get coffee, meals, and ice cream at a high-end bakery.

45.     *Seclusion with students.* In contravention of its policy, Saint Ann's also let Nguyen give favored students keys to his special office, where they would skip class and hang out unsupervised.

46.    *Transgressing boundaries.* Nguyen repeatedly used his access to student files—access with which the School and its leaders entrusted him—to learn student addresses and "surprise" them at home with hand-delivered desserts and lavish gifts.

47.    In the summers of 2022 and 2023, Nguyen invited select Saint Ann's students to an unauthorized "Pre-Season Math" program on School campus. With no administrative supervision, Nguyen used the summer classes to insinuate himself into students' lives even when School was not in session.

48.    *Online and social media grooming.* Saint Ann's prohibits teachers from following students on social media or texting them. Nguyen repeatedly violated those policies. He used his Saint Ann's email account—an instrumentality with which the School entrusted him—to send students TikToks and to solicit similar messages in return. He allowed students to use social media in the office that he commandeered as a teen hang-out space. And he texted students repeatedly.

### Saint Ann's and its Leaders ignore red flags and actively suppress concerns.

49.    Saint Ann's knew about all these violations and danger signs, but it still preserved Nguyen's access to vulnerable children. What it did not actively facilitate, it protected through suppressing the truth and bullying whistleblowers.

50.    Throughout Nguyen's tenure, the School knew that Nguyen was using School resources to bribe students. No later than October 2021, it knew that he was sleeping over in the School building. During the 2021-2022 school year, it knew that he had commandeered an office. It knew in August 2020 that it had given him the keys to the building.

51.    The School knew about Nguyen's more specific and troubling violations, too. Parents reported that they were upset about Nguyen coming to their homes. In August 2023, an administrator discovered Nguyen's unsupervised, on-campus instruction and demanded that Saint

Ann's fire Nguyen for his misconduct. But the School kept Nguyen in a child-facing role, and as late as May 2024—one month before his arrest—continued recommending that families retain Nguyen for informal tutoring.

52.    By spring 2021 at the latest, Saint Ann's knew that Nguyen was violating School rules by interacting with students on social media. The Report documents that, in April 2021, Nguyen "looked up [a] student's [Instagram] account" and forwarded one of the student's posts to Yusuf-Morales, the Head of Saint Ann's Upper Middle School. Yusuf-Morales did nothing to discipline or restrain him.

53.    The School and its Leaders went further than turning a blind eye to these violations. They shouted down critics and lied about the truth.

54.    As Saint Ann's students, parents, teachers, and administrators eventually discovered Nguyen's history on their own, Saint Ann's routinely dismissed their concerns, claiming that he had committed only a "financial crime" and that he "deserved a second chance," and shamed them for being insufficiently supportive of the School's purported "restorative justice" aims.[23]

55.    The School silenced its own faculty. When several teachers reported Nguyen's misconduct, School Leaders responded with scolding or shaming, rejecting the concerns as "racially motivated."[24] Many faculty members came to see that School leadership was committed to protecting Nguyen: according to the Report, teachers believed that "raising issues [about Nguyen] might place their own reputations and careers in jeopardy" because Saint Ann's often

---

[23] Report, p. 14.

[24] Report, p. 30-31.

retaliated against teachers who raised substantive concerns about colleagues who were people of color or were hired as a "second chance" after prior misconduct. According to the Report, when a teacher complained, Yusuf-Morales would tell Tompkins, "who would scold" the whistleblower "for not abiding by Saint Ann's values."[25]

56.    The School silenced its students. When Nguyen's students Googled him in October 2021, they were "disturbed" to learn that their teacher "had taken advantage of vulnerable seniors." The School championed and empowered Nguyen anyway. When one student dared to ask Saint Ann's to let him out of Nguyen's class, Saint Ann's refused. Instead, Saint Ann's forced the student to sit one-on-one with Nguyen to "work through the student's concerns" that Nguyen posed a danger to the community. Saint Ann's similarly "shamed" other students who reported Nguyen's frequent misconduct, condemning the students for not "supporting restorative justice" or for "spreading rumors."[26]

57.    The School silenced parents, too. According to the Report, Saint Ann's labeled parents who expressed concerns "not a good fit" or "not sufficiently progressive," and shamed them for failing to support "restorative justice." Fearing that their kids would be forced out of Saint Ann's, parents felt forced to drop their complaints.[27]

***Saint Ann's empowers Nguyen to use School resources and connections to commit sex crimes against Jane and Joan.***

---

[25] *See, e.g.*, Report, p. 31.

[26] *See, e.g.*, Report, p. 14.

[27] Report, p. 32; Caitlin Moscatello & James D. Walsh, *How Did a Brooklyn Private School Fall for An Accused Predator?*, N.Y. MAGAZINE (Aug. 1, 2024), https://nymag.com/intelligencer/article/saint-anns-winston-nguyen-scandal-snapchat.html.

58.     On information and belief, in or around the fall of 2022, Nguyen used the School's student information directory to launch his online sex crime spree. Nguyen had access to that directory only because of his position as a Saint Ann's teacher.

59.     Because Saint Ann's entrusted Nguyen with its students' contact information, he was able to quickly add the School's student body to his Snapchat network, where he posed as a 16-year-old boy under the handle "hunterkristoff."

60.     By insinuating himself through student contacts, Nguyen created the false impression that "hunterkristoff" was a member of the students' social community.

61.     Through that network of students, Nguyen—under his "hunterkristoff" alias—first connected with Jane and Joan in the fall of 2022.

62.     Jane and Joan were just thirteen years old and entering eighth grade at a Brooklyn private school. They started interacting with Nguyen's account only because they saw that he was already connected with a critical mass of their friends.

63.     Over many months, Nguyen got to know both Jane and Joan through his fake teenage boy persona. He exploited their vulnerabilities and insecurities, and shared invented vulnerabilities of his own—including, for instance, the lie he was struggling with his (fictional) parents' unfolding divorce.

64.     In grooming Jane and Joan, Nguyen deployed the skills he had honed at Saint Ann's. He lavished special treatment on the girls. He connected with them all through the day and night—including during school hours, when he was working at the School. He complimented them, pretended to share in their frustrations, bonded with them over family and social struggles, and helped them with homework—including with the same math subjects he was teaching their peers at Saint Ann's.

17

65.    Soon after he initiated contact with the girls, Nguyen grew bolder, weaving more emotional and empathetic messages, and, slowly, expressions of romantic interest, into their exchanges.

66.    Then Nguyen's messages turned explicit. For example, Nguyen told Jane he was "getting hard thinking about [her]"; that she "made him horny"; and that, if they were in person, he would "lick [her]" and "ask [her] for a blowjob." Nguyen would tell Jane the intimate details of his purported sex life with his ex-girlfriend. He asked her to have a threesome with another of her friends who had been communicating with Nguyen's "hunterkristoff" persona.

67.    Nguyen also sent Jane and Joan explicit content of an unknown underaged boy and/or of himself, including photos of a penis and videos of masturbating and ejaculation.

68.    Nguyen pushed both girls for explicit pictures—first of them in their underwear, and then with full frontal nudity. With time, Nguyen demanded that Jane and Joan send him videos of themselves naked, undressing, and engaged in sexual acts. When the girls pushed back, Nguyen used guilt to manipulate them and overcome their reticence, pretending to be anguished by the ongoing divorce between his made-up parents.

69.    The girls felt pressure to comply because they perceived Nguyen to be a peer in their social circles with significant social clout given his account's large network of Saint Ann's connections.

70.    But eventually, as the girls became increasingly uncomfortable with Nguyen's persistent demands, Jane and Joan overcame his influence and began distancing themselves from his invasive requests. Joan blocked Nguyen's account entirely around late July 2023, and Jane blocked him in October 2023.

71.    In January 2024, Nguyen retaliated. First, he circulated child sexual abuse material of Jane and Joan to a few of the girls' Snapchat contacts.

72.    He didn't stop there. During the school day on or about February 5, 2024, Nguyen sent his students—and countless others in Jane and Joan's peer group—a revenge porn blast with dozens of explicit pictures of Jane, Joan, and other children.

73.    Nguyen disseminated this child sexual abuse material from the School's campus; to a network of School students whose contact information had been entrusted to him by the School; during School hours; while actively on the job as a School teacher; and using School internet facilities, resources, and access privileges. Nguyen's child sexual abuse material showed the girls' faces and identified them by name.

### *Saint Ann's refuses to intervene to protect Jane and Joan.*

74.    Saint Ann's knew in real time that its students—and others, like Jane and Joan— were the victims of child sexual abuse materials, and that those materials were being circulated online. But, concerned about the optics of yet another scandal, Saint Ann's did not reach out to law enforcement or even alert parents beyond the ones whose children were immediately affected. The School protected itself, not its children.

75.    On or around February 5, 2024, Saint Ann's learned that its students had received explicit photos of young girls, which Nguyen was spreading—without the victims' consent or knowledge—over Snapchat. Those girls included Joan and Jane, along with other students in the same social circles.

76.    On or around April 19, 2024, Saint Ann's learned that Nguyen had disseminated explicit photos of other, even younger girls to School students.

77.    After each round of dissemination, Saint Ann's met with its own affected students but took no other steps to help. Saint Ann's did not report the series of Snapchat-related revenge porn incidents to the police. It did not investigate to find the revenge porn's disseminator. It did nothing to mitigate or prevent the ongoing dissemination of child pornography.

78.    Saint Ann's was uniquely positioned to help Jane and Joan. Only the School knew about both the revenge porn circulating and Nguyen's history of misconduct. But it withheld that information from the community and from law enforcement.

79.    Joan and Jane stood up, though. They went to police and prosecutors, and they made the report that led to Nguyen's arrest on June 6, 2024. The arrest happened in front of Saint Ann's students, right next to school grounds. Without Joan and Jane, Nguyen would never have been caught or held accountable.

80.    Victim impact statements from both Joan and Jane were read in court on March 3, 2025, when Nguyen was sentenced to seven years in a New York State prison for his crimes.

81.    To this day, the School has never reached out to Joan and Jane to express either its apologies or its gratitude.

***Defendants' actions and inactions cause irreparable harm to Joan and Jane.***

82.    Saint Ann's and its Leaders empowered Nguyen to prey upon Jane and Joan in their most vulnerable moments—to manipulate them, play on their emotions, and pressure them to send explicit photos and videos. The School and its Leaders then enabled Nguyen to release child sexual abuse materials, which will live online forever.

83.    Jane and Joan have each suffered unfathomable trauma as a result. Their trust in teachers, friends, and society as a whole has been shattered.

84.     As Jane described it in her sentencing statement, she did not know how to refuse Nguyen's incessant demands. As a child she "was naïve and insecure, [he] used [her] adolescence to manipulate [her]."

85.     Jane suffered from immense shame and anxiety because of Defendants' conduct. She struggled to sleep. She could not go to school. In the spring of 2025, she had to be hospitalized after she went four straight nights without sleep.

86.     Joan describes crying herself to sleep every night since Nguyen's crimes, "wondering what kind of sick person could do this to someone." Because of Defendants, Joan lives in constant fear that people she has never met have "seen [her] naked body." She cannot look at herself without thinking of the Saint Ann's teacher and "all the inappropriate things [he] said about [her] body." Joan's father had to quit his job to support Joan through the intense emotional struggles she faced because of Defendants.

87.     Jane and Joan are terrified that the intimate images—which show their faces and identify them by name—will resurface and be used against them later in life.

## FIRST CAUSE OF ACTION
### Sexual Exploitation of Children under 18 U.S.C. § 2255
### (against Winston Nguyen)

88.     Plaintiffs reallege every allegation in the preceding paragraphs as if set forth fully here.

89.     Jane and Joan were thirteen years old when Nguyen solicited child sexual abuse materials from them and posted those materials on the internet. Nguyen deliberately targeted Jane and Joan knowing that they were children.

90.     Nguyen knowingly engaged in conduct that would violate federal criminal statutes listed in 18 U.S.C. § 2255, including 18 U.S.C. §§ 2251, 2252, 2252A, and 2422(b). He persuaded, induced, directed, enticed, solicited, and coerced Jane and Joan to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct.

91.     Nguyen knowingly received, possessed, and distributed visual depictions of Jane and Joan engaging in sexually explicit conduct, using means and facilities of interstate commerce – the internet.

92.     As a direct and proximate result of Nguyen's violation of the enumerated federal criminal statutes, Jane, Joan, and their families suffered severe and lasting injuries within the meaning of 18 U.S.C. § 2255, including extreme emotional distress, psychological trauma, loss of privacy, shame, fear, reputational harm, and economic damages.

**<u>SECOND CAUSE OF ACTION</u>**
**Nonconsensual Disclosure of Intimate Visual Depictions under 15 U.S.C. § 6851**
**(against Winston Nguyen)**

93.     Plaintiffs reallege every allegation in the preceding paragraphs as if set forth fully here.

94.     Winston Nguyen disclosed, distributed, transmitted, and otherwise made available intimate visual depictions of Jane and Joan to other people on the internet. Those intimate visual depictions showed Jane and Joan engaged in sexually explicit conduct, and depicted their naked bodies.

95.     Jane and Joan did not consent to the disclosure, distribution, or dissemination of their intimate visual depictions. Nguyen knew that they had not consented. He did it to hurt and embarrass them.

96.     Nguyen's disclosures were made using means and facilities of interstate commerce and were made in or affecting interstate commerce, including through use of the internet, electronic devices, and digital communication platforms.

97.     As a direct and proximate result of Nguyen's actions, Jane, Joan, and their families suffered severe and lasting injuries, including extreme emotional distress, psychological trauma, loss of privacy, reputational harm, and economic damages.

**THIRD CAUSE OF ACTION**
**Sexual Exploitation and Abuse of a Minor under CPLR 214-g**
**(against Winston Nguyen)**

98.     Plaintiffs reallege every allegation in the preceding paragraphs as if set forth fully here.

99.     When Jane and Joan were under the age of 18, Winston Nguyen sexually exploited them by inducing them to create and transmit sexually explicit images and videos of themselves, which Nguyen later disseminated to others using the internet, in violation of New York Penal Code 263.05.

100.     Nguyen's conduct constituted sexual exploitation and abuse of minors, including the intentional violation of Jane and Joan's sexual integrity, bodily autonomy, and personal security.

101.     Nguyen knew, or consciously disregarded the substantial certainty, that his conduct would cause Jane and Joan severe emotional and psychological harm. His conduct was willful, malicious, and undertaken for his own sexual gratification.

102.     As a direct and proximate result of Nguyen's actions, Jane, Joan, and their families suffered severe and lasting injuries, including extreme emotional distress, psychological trauma, loss of privacy, reputational harm, and economic damages.

## FOURTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (against Winston Nguyen)

103.    Plaintiffs reallege every allegation in the preceding paragraphs as if set forth fully here.

104.    Nguyen engaged in extreme and outrageous conduct by intentionally soliciting, inducing, and coercing Jane and Joan to create and transmit sexually explicit images, and by disseminating those images on the internet without Jane and Joan's consent.

105.    Nguyen intended to cause Jane and Joan emotional distress, or acted with reckless disregard of the near certainty that severe emotional distress would result. He sent these images to others to punish Jane and Joan for refusing to continue sending sexually explicit materials and for blocking him.

106.    Nguyen's deployment of revenge porn against children exceeded all bounds of decency tolerated in a civilized society.

107.    As a direct and proximate result of Nguyen's actions, Jane and Joan and their families suffered severe and lasting injuries, including extreme emotional distress, psychological trauma, loss of privacy, and reputational harm.

## FIFTH CAUSE OF ACTION
### Gender Motivated Violence under New York City Administrative Code §§ 8-901 to 8-905
### (against Winston Nguyen)

108.    Plaintiffs reallege every allegation in the preceding paragraphs as if set forth fully here.

109.    Winston Nguyen committed acts of gender-motivated violence against Jane and Joan, within the meaning of the New York City Victims of Gender-Motivated Violence Protection Act ("GMVA"), NYC Administrative Code §§ 8-901 to 8-905. He groomed and coerced the girls

24

to create and transmit sexually explicit images of themselves, and by later disclosing and disseminating those images without their consent.

110.    Nguyen's conduct was committed at least in part because of Jane and Joan's gender. He did not target boys of the same age. He violated their sexual autonomy and bodily integrity through a gender-based act of sexual exploitation.

111.    Nguyen's acts were intentional, malicious, and undertaken for his own sexual gratification. He directly and proximately caused Jane and Joan severe harm, including extreme emotional distress, psychological trauma, loss of privacy, shame, fear, and lasting impairment of their emotional well-being.

### SIXTH CAUSE OF ACTION
**Negligent Hiring and Promotion**
**(against Saint Ann's and against Tompkins, Kantor, and Yusuf-Morales)**

112.    Plaintiffs reallege every allegation in the preceding paragraphs as if set forth fully here.

113.    Defendants had a duty to exercise reasonable care in hiring employees whose positions involved access to minors, school facilities, school technology, and institutional authority.[28]

114.    That duty extended to Jane and Joan. Because of its large student body and longtime prominence, Saint Ann's is at the heart of Brooklyn's creative community. Saint Ann's teachers and students overwhelmingly live in Brooklyn, and regularly interact with, befriend, and form a larger community with youth who attend other schools in Brooklyn. Saint Ann's regularly hosts

---

[28] Duty is not an element of negligent hiring under New York law. *Montague v. Williams*, 21-CV-4054 (MKB), 2023 WL 2710320, at *12 (E.D.N.Y. Mar. 30, 2023) (a negligent hiring claim "differs from the elements required to prove a claim of general or gross negligence because plaintiff need not prove that defendants owed them a duty of care."). But Defendants did have a duty to Joan and Jane. They let the children and their families down.

community events to foster this interconnectedness. Examples include inviting volunteers to build "dignity kits" at the school with Saint Ann's employees to "support Brooklyn community members with essential personal care items" in honor of MLK Day; inviting community members to attend a talk about the intersection of art and sexuality ("Art as Survival: The Necessity of LGBTQ+ Artmaking in Every Age"); and inviting community members to a photography exhibition about "New York's Asylum Seekers."

115.    Saint Ann's knew or should have known that Nguyen's access to the School's students, including their social media and other personal information, gave him access to the broader community of Brooklyn private school students like Jane and Joan.

116.    In or about August 2020, Saint Ann's hired Winston Nguyen and gave him access to school premises, school-owned devices, student contact information, school network and email systems, and significant autonomy and authority.

117.    Saint Ann's is liable for the negligent hiring and promotion of Nguyen directly and through the acts and omissions of its Leaders. Defendants Tompkins, Kantor, and Yusuf-Morales are personally liable for their own negligence. Tompkins, Kantor, and Yusuf-Morales each personally participated in, authorized, approved, and/or substantially assisted the School's hiring of Nguyen, including by recommending him, approving his hire, allowing him to begin work, failing to properly vet him, and giving him access to school premises, systems, and instrumentalities.

118.    When Defendants hired Nguyen and then fast tracked him into student-facing roles, they knew or should have known that Nguyen posed an unreasonable risk of harm to children and others. They knew, or should have known, of his propensity to engage in the exact behaviors—

grooming, boundary-crossing, deceit, taking advantage of vulnerable people—that he inflicted on Plaintiffs.

119.    Despite this knowledge, Defendants failed to exercise reasonable care in the hiring process. Among other things, Saint Ann's violated its own policies by authorizing Nguyen to begin work and access school systems and facilities without a background check. Saint Ann's failed to adequately investigate the nature, scope, and recency of Nguyen's criminal history. It failed to vet his claims of prior employment. And it failed to impose appropriate conditions, limitations, or safeguards at the time of hiring. It streamlined his access into classrooms.

120.    If Defendants had never hired and promoted Nguyen, he never would have had access to the information he needed to contact and prey upon minors, like Jane and Joan. The position he held at Saint Ann's allowed Nguyen to obtain the access, trust, and institutional legitimacy that he later used to identify, contact, groom, solicit, exploit, and victimize Jane and Joan. The risks posed by Nguyen's known history and characteristics were the same risks that materialized and injured Plaintiffs.

121.    As a direct and proximate result of Defendants' negligent hiring of Nguyen, Jane, Joan, and their families suffered severe and lasting injuries, including extreme emotional distress, psychological trauma, loss of privacy, reputational harm, and economic damages.

## SEVENTH CAUSE OF ACTION
### Negligent Supervision and Retention
### (against Saint Ann's and all the School Leaders)

122.    Plaintiffs reallege every allegation in the preceding paragraphs as if set forth fully here.

123.    Defendants had a duty to exercise reasonable care in supervising and retaining employees whose positions involved access to minors, school facilities, school technology, and institutional authority.[29]

124.    That duty extended to Jane and Joan. Because of its large student body and longtime prominence, Saint Ann's is at the heart of Brooklyn's creative community. Saint Ann's teachers and students overwhelmingly live in Brooklyn, and regularly interact with, befriend, and form a larger community with youth who attend other schools in Brooklyn. Saint Ann's regularly hosts community events to foster this interconnectedness. Examples include inviting volunteers to build "dignity kits" at the school with Saint Ann's employees to "support Brooklyn community members with essential personal care items" in honor of MLK Day; inviting community members to attend a talk about the intersection of art and sexuality ("Art as Survival: The Necessity of LGBTQ+ Artmaking in Every Age"); and inviting community members to a photography exhibition about "New York's Asylum Seekers."

125.    Saint Ann's knew or should have known that Nguyen's access to the School's students, including their social media and other personal information, gave him access to the broader community of Brooklyn private school students like Jane and Joan.

126.    Defendants retained Winston Nguyen and failed to supervise him in roles that gave him access to children, school facilities, school technology, and institutional authority.

---

[29] Duty is not an element of negligent retention and supervision under New York law. *Montague v. Williams*, 21-CV-4054 (MKB), 2023 WL 2710320, at *12 (E.D.N.Y. Mar. 30, 2023) ("a claim of negligent retention requires a plaintiff to allege that the defendant knew of the employee's propensity to engage in harmful conduct and the insufficient supervision or training caused harm. Unlike a claim for general or gross negligence, a plaintiff need not prove that a defendant owed them a duty of care."). But again: Defendants did have a duty to Joan and Jane, and they let the children and their families down.

127.    Saint Ann's is liable for the negligent supervision and negligent retention of Nguyen directly and through the acts and omissions of its Leaders. Tompkins, Reid, Kantor, and Yusuf-Morales are all personally liable for their own negligence. Tompkins, Reid, Kantor, and Yusuf-Morales each exercised supervisory authority over Nguyen and had responsibility for his supervision, access, discipline, and continued employment.

128.    Defendants retained and failed to supervise Nguyen long after they knew, or should have known, facts showing that Nguyen posed an unreasonable risk of harm to children and others.

129.    At least after their well-publicized failures to protect students in 2018 and 2019, Defendants should have foreseen the risks of failing to adequately supervise faculty. Instead, Defendants took pride in giving faculty unfettered access to vulnerable children.

130.    Defendants retained and failed to supervise Nguyen long after they knew, or should have known, that Nguyen had a propensity to engage in the exact behaviors—grooming, boundary-crossing, deceit, taking advantage of vulnerable people—that he inflicted on Plaintiffs. Any reasonable employer in Defendants' place would have disciplined and fired Nguyen long before he hurt Jane and Joan.

131.    Rather than supervise and discipline Nguyen, though, Defendants retained, promoted, empowered, coddled, and covered for him until the day of his arrest. Among other things: they took no meaningful action even after they learned about Nguyen's history of endangering vulnerable people in his care. They aggressively suppressed complaints about Nguyen from teachers, students, and parents. They ignored Nguyen's pattern of boundary violations and disregard of school policies, including inappropriately engaging with students on social media.

132.    Saint Ann's negligence in retaining and failing to supervise Nguyen was both a substantial factor and the but-for cause of Nguyen's sexual exploitation of Jane and Joan. If

Defendants had done their jobs and exercised reasonable care, the children would have remained safe and unharmed, because—among other things—Nguyen would never have been able to insinuate himself into Jane and Joan's lives.

133.    As a direct and proximate result of Defendants' negligent supervision and negligent retention, Jane and Joan suffered severe and lasting injuries, including extreme emotional distress, psychological trauma, loss of privacy, reputational harm, and economic damages.

**EIGHTH CAUSE OF ACTION**
**Negligent Entrustment**
**(against Saint Ann's and all the School Leaders)**

134.    Plaintiffs reallege every allegation in the preceding paragraphs as if set forth fully here.

135.    At all relevant times, Saint Ann's and its Leaders owned, possessed, controlled, and issued to their employees instrumentalities and chattels including student directories; School-owned computers and electronic devices; network and internet access credentials; email accounts; data-storage systems; software platforms; and keys to the School.

136.    Saint Ann's and its Leaders entrusted the Instrumentalities to Winston Nguyen in connection with his employment. The School and its Leaders allowed Nguyen to use the Instrumentalities during and after work hours, on and off school premises.

137.    When Saint Ann's and its Leaders first entrusted and continued to entrust the Instrumentalities to Nguyen, the School and its Leaders knew or should have known that Nguyen was unfit to be entrusted with that access, because he presented an unreasonable risk of misuse.

138.    The School and its Leaders should have known of that risk based on facts including Nguyen's felony convictions for exploiting and endangering vulnerable people; Nguyen's repeated violations of professional boundaries and school policies; Nguyen's grooming of students;

Nguyen's unauthorized and inappropriate use of social media to connect with students; Nguyen's pattern of seeking excessive, unsupervised access to school spaces, devices, and systems; and warnings and red flags communicated to senior administrators about Nguyen's conduct, judgment, and risk profile.

139.    Despite this knowledge, Saint Ann's and its Leaders negligently entrusted and continued to entrust Nguyen with the Instrumentalities, without imposing reasonable restrictions, monitoring, or supervision.

140.    The Instrumentalities entrusted to Nguyen were capable of being used, and were foreseeably likely to be used, in a manner involving an unreasonable risk of harm to minors if entrusted to an unfit employee.

141.    Saint Ann's and its Leaders could have foreseen, and actually foresaw, that risk. The risk is why School had policies against precisely the kind of abuse of School Instrumentalities—like the keys and the student contact information—that Nguyen ultimately committed.

142.    Nguyen used the Instrumentalities entrusted to him by Saint Ann's and its Leaders, to identify, contact, groom, solicit, exploit, and victimize Jane and Joan.

143.    The School and its Leaders' failure to revoke, limit, or control Nguyen's access was both the but-for cause of, and a substantial factor in, causing Plaintiffs' injuries.

144.    Saint Ann's is liable for negligent entrustment directly and through the acts and omissions of its Leaders. Tompkins, Reid, Kantor, and Yusuf-Morales are all personally liable for their own negligence.

145.    As a direct and proximate result of the negligent entrustment by Saint Ann's and its Leaders, Jane and Joan and their families suffered severe and lasting injuries, including extreme

31

emotional distress, psychological trauma, loss of privacy, reputational harm, and economic damages.

## NINTH CAUSE OF ACTION
### Vicarious Liability/Respondeat Superior Liability
### (against Saint Ann's and all the School Leaders)

146.    Plaintiffs reallege every allegation in the preceding paragraphs as if set forth fully here.

147.    At all relevant times, Winston Nguyen was an employee of Saint Ann's, acting within the course and scope of his employment and with the aid of the authority and access conferred by Saint Ann's.

148.    At all relevant times, the School Leaders exercised supervisory authority over Nguyen and had responsibility for decisions concerning Nguyen's access, supervision, discipline, and continued employment.

149.    Saint Ann's violated its own hiring and vetting policies to expedite and facilitate putting Nguyen in student-facing and administrative roles with access to vulnerable young people, school facilities, school networks, school devices, and school communication systems. The School and its Leaders cloaked him with the authority, trust, and apparent legitimacy of a favored Saint Ann's faculty member.

150.    During Nguyen's employment, and while on paid work time and/or using Saint Ann's equipment, network, facilities, and institutional access, he identified, contacted, groomed, solicited, exploited, and victimized Jane and Joan.

151.    Nguyen's tortious conduct was enabled, facilitated, and materially advanced by the authority, access, trust, and instrumentalities conferred on him by Saint Ann's and its Leaders.

152.    Nguyen's actions were a foreseeable outgrowth of his history of abusing and grooming vulnerable people—a history that Saint Ann's knew. His actions were also a foreseeable outgrowth of authority, access, and trust placed in him by Saint Ann's, and were committed with the aid of his position as a Saint Ann's employee.

153.    More: Nguyen's actions were actually foreseen by parents, students, and teachers—including the department heads who refused to accept Nguyen as a teacher. But Saint Ann's actively silenced, sidelined, and shamed those stakeholders who raised the alarm.

154.    At the time of Nguyen's tortious misconduct, Saint Ann's knew or should have known that Nguyen posed a substantial risk of abusing institutional access to harm minors, given his criminal history involving exploitation of vulnerable persons, his repeated boundary violations, and his misuse of school access and authority.

155.    Saint Ann's is vicariously liable for Nguyen's torts under principles of agency and respondeat superior, and the School Leaders are liable to the extent they personally participated in, authorized, acquiesced in, and/or enabled Nguyen's continued access and authority that materially facilitated his tortious misconduct.

156.    As a direct and proximate result of Nguyen's tortious acts, for which Saint Ann's and its Leaders are vicariously liable, Plaintiffs suffered severe and lasting injuries, including extreme emotional distress, psychological trauma, loss of privacy, reputational harm, and economic damages.

### **TENTH CAUSE OF ACTION**
### **Negligent Infliction of Emotional Distress**
### **(against Saint Ann's and all the School Leaders)**

157.    Plaintiffs reallege every allegation in the preceding paragraphs as if set forth fully here.

158.    Jane and Joan were direct victims of sexual exploitation and related misconduct perpetrated by Winston Nguyen while he was employed by Defendants.

159.    At all relevant times, Defendants owed Plaintiffs a duty of reasonable care arising from their control over Nguyen's hiring, supervision, retention, access to school instrumentalities, and continued placement in positions of trust and authority.

160.    That duty included an obligation to protect foreseeable child victims from emotional harm resulting from the misuse of institutional authority, access, and instrumentalities to engage in sexual exploitation and related misconduct.

161.    Defendants knew or should have known that Nguyen posed a substantial and unreasonable risk of causing severe emotional harm to children, including because of his criminal history involving exploitation of a vulnerable person, his repeated violations of professional boundaries and school policies, and multiple warnings and red flags concerning his conduct, judgment, and risk profile.

162.    Despite this knowledge, Defendants negligently breached their duty by, among other things: hiring, retaining, and continuing to supervise Nguyen in roles involving access to minors and to school-owned devices, networks, credentials, facilities, and unsupervised work time; failing to impose and enforce reasonable restrictions, monitoring, or safeguards on Nguyen's access and conduct; and allowing Nguyen to continue to use the authority, access, and instrumentalities of his employment after Defendants had notice of the risk he posed.

163.    As a foreseeable and direct result of Defendants' negligence, Nguyen used the authority, access, and instrumentalities provided by his employment to identify, contact, groom, solicit, exploit, and victimize Jane and Joan.

164.    Plaintiffs were not bystanders to Nguyen's misconduct but were its direct and intended targets. The severe emotional distress Plaintiffs suffered was the predictable and inevitable consequence of Nguyen's misconduct that Defendants' negligence enabled.

165.    Saint Ann's School is liable for negligently inflicting emotional distress, directly and through the acts and omissions of its Leaders. The Leaders are personally liable for their own negligent conduct.

166.    Defendants' negligent acts and omissions were both substantial factors and the but-for causes of Plaintiffs' injuries. If Saint Ann's and its Leaders had never hired Nguyen, or if they had discharged him or monitored his behavior, he never would have found Jane and Joan. Because of Defendants, Plaintiffs suffered serious and verifiable emotional injuries, including extreme emotional distress, psychological trauma, anxiety, shame, fear, loss of privacy, and lasting impairment of their emotional well-being, requiring medical and psychological treatment.

## **PRAYER FOR RELIEF**

Plaintiffs ask this Court to enter judgment in their favor and against Defendants, granting Plaintiffs the following relief against Defendants, or any jointly or severally liable person or entity, in amounts to be determined at trial:

A.  Statutory damages and liquidated damages;

B.  Compensatory damages to make Plaintiffs and their children whole for all monetary and/or economic damages they suffered;

C.  Compensatory damages to make Plaintiffs and their children whole for all non-monetary damages they suffered, including emotional distress and reputational harm;

D.  Punitive damages and any applicable penalties;

E.  Prejudgment interest on all amounts due;

F.  An award of costs that Plaintiffs have incurred in this action, including expert witness fees, as well as Plaintiffs' reasonable attorney's fees and costs to the fullest extent permitted by law; and,

G.  Such other and further relief as the Court may deem just and proper.

Dated: January 29, 2026

New York, New York

/s/ JOSHUA PERRY
JOSHUA PERRY
VICTORIA RECALDE FELDMAN
BRITTANY HANKE
E. DANYA PERRY PLLC
445 Park Avenue, 7th Floor
New York, New York 10022
Telephone: (212) 213-3070
jperry@danyaperrylaw.com

*Counsel for Plaintiffs*