# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

JUDY DOE,
      individually and as parent and guardian of
      her daughter, JANE DOE, and
JOHN ROE,
      individually and as parent and guardian of
      his daughter, JOAN ROE,
          *Plaintiffs,*

         v.

WINSTON NGUYEN;
SAINT ANN'S SCHOOL;
VINCENT TOMPKINS, KENYATTE REID,
MELISSA KANTOR, and MAUREEN
YUSUF-MORALES
      in their individual capacities and in their
      capacities as officers of Saint Ann's School.
         *Defendants.*

Case No. 26-cv-00507-OEM-SDE

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

Dated: July 1, 2026

JOSHUA PERRY
VICTORIA RECALDE FELDMAN
BRITTANY HANKE
E. DANYA PERRY PLLC
445 Park Avenue, 7th Floor
New York, NY 10022
(212) 213-3070
jperry@danyaperrylaw.com

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTS ..................................................................................................................................2

ARGUMENT .........................................................................................................................7

    I.      Defendants are liable for negligently hiring and retaining Nguyen. .................................7

        A.     Defendants were on notice of Nguyen's crimes and grooming.................................. 7

        B.     Defendants' "nexus between the parties" test does not exist in New York law......... 11

        C.     The negligence counts are not duplicative. ............................................................... 14

    II.     Defendants are liable for negligently entrusting Nguyen with School chattels. .............15

        A.     Nguyen's misuse of School chattels was foreseeable. .............................................. 15

        B.     The chattels count is not duplicative. ....................................................................... 16

        C.     Nguyen used School chattels to distribute CSAM of Jane and Joan......................... 17

    III.    Defendants are liable for negligent infliction of emotional distress. ..............................17

        A.     The Complaint adequately pleads both special circumstances and duty.................... 17

        B.     The NIED count is not duplicative. .......................................................................... 20

    IV.    The School Leaders are individually liable because each leader exercised the requisite control over Nguyen. .....................................................................................................20

    V.     Plaintiffs will be entitled to punitive damages. ............................................................22

    VI.    Judy Doe and Joan Roe are the proper plaintiffs. .........................................................25

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d 505 (S.D.N.Y. 2004) ............................................... 9

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) ....................................................... 24

*Brophy v. Big Bros. Big Sisters of Am., Inc.*, 224 A.D.3d 866 (2d Dep't 2024)........................... 10

*Brown v. New York Design Ctr., Inc.*, 215 A.D.3d 1 (1st Dep't 2023) ........................................ 18

*C.Q. v. Est. of Rockefeller*, 20-CV-2205 (VSB), 2021 WL 4942802 (S.D.N.Y. Oct. 21, 2021).. 15

*C.R. v. Episcopal Diocese of N.Y.*, 248 A.D.3d 1 (1st Dep't 2025)..................................... 23, 25

*Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308 (1980)...................................... 13

*Detone v. Bullit Courier Serv., Inc.*, 140 A.D.2d 278 (1st Dep't 1988) ......................................... 8

*Doe 42 v. Yeshiva Univ.*, 245 A.D.3d 545 (1st Dep't 2026)........................................... 21

*Doe 7015 v. Elektra Ent. Grp. Inc.*, 21-CV-6868 (JPC), 2023 WL 2744102 (S.D.N.Y. Mar. 31, 2023) .......................................................................................... 12

*Doe Three v. KIPP Acad. Charter Sch.*, 235 A.D.3d 406 (1st Dep't 2025)................................ 21

*Doe v. Hauppauge Union Free Sch. Dist.*, 213 A.D.3d 809 (2d Dep't 2023)............................. 14

*Doe v. Poly Prep Country Day Sch.*, 20-CV-04718 (DGPK), 2022 WL 4586237 (E.D.N.Y. Sep. 29, 2022) ....................................................................................... 11

*Earsing v. Nelson*, 212 A.D.2d 66 (4th Dep't 1995) ....................................................... 16

*Farrell v. U.S. Olympic & Paralympic Comm.*, 567 F. Supp. 3d 378 (N.D.N.Y. 2021)........ 10, 20

*Fat Brands Inc. v. Ramjeet*, 75 F.4th 118 (2d Cir. 2023) ............................................... 21

*Finkel v. Dauber*, 29 Misc. 3d 325 (Sup. Ct. 2010)....................................................... 17

*Gonzalez v. City of New York*, 133 A.D.3d 65 (1st Dep't 2015) ................................................ 14

*Graham v. Jones*, 147 A.D.3d 1369 (4th Dep't 2017)...................................................... 15

*Greenwood v. Am. Kennel Club*, 23-CV-10516 (GHW), 2026 WL 1113381 (S.D.N.Y. Apr. 24, 2026) .................................................................................................................. 11

*Hain v. Jamison*, 28 N.Y.3d 524 (2016) ............................................................................. 13

*Haybeck v. Prodigy Services Co.*, 944 F. Supp. 326 (S.D.N.Y. 1996) ........................................ 17

*Hering v. Lighthouse 2001, LLC*, 21 A.D.3d 449 (2d Dep't 2005) ............................................. 20

*Ho v. Pierpont Rsrvs. Ltd.*, 18-CV-9940 (DABSN), 2020 WL 1644008 (S.D.N.Y. Apr. 2, 2020) .................................................................................................................................... 19

*Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196 (1990) .......................................... 23

*In re GEICO Customer Data Breach Litig.*, 691 F. Supp. 3d 624 (E.D.N.Y. 2023) .................... 13

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65 (2d Cir. 2013) ........ 24

*J.R. v. N.Y. City Dep't of Educ.*, 14-CV-392 (ILG) (RML), 2015 WL 5007918 (E.D.N.Y. Aug. 20, 2015) .................................................................................................................... 25

*Johnson v. United States*, 759 F. Supp. 3d 425 (S.D.N.Y. 2024) ............................................ 18

*Kenneth R. v. Roman Cath. Diocese of Brooklyn*, 229 A.D.2d 159 (2d Dep't 1997) ..................... 8

*Lee v. Albarran*, 23-CV-11215 (NSR), 2026 WL 686156 (S.D.N.Y. Mar. 11, 2026) ............. 7, 12

*Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645 (S.D.N.Y. 2024) ...................................... 10

*Montague v. Williams*, 21-CV-4054 (MKB), 2023 WL 2710320 (E.D.N.Y. Mar. 30, 2023) .... 12, 14, 15, 16

*Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150 (2023) .................................. 8, 9

*PB-20 Doe v. St. Nicodemus Lutheran Church*, 228 A.D.3d 1233, *reargument denied*, 230 A.D.3d 1594 (4th Dep't 2024) .................................................................................... 10

*PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551 (E.D.N.Y. 2021) .................... 21

*People v. Keyes*, 75 N.Y.2d 343 (1990) ............................................................................. 24

*Pisula v. Roman Cath. Archdiocese of N.Y.*, 201 A.D.3d 88 (2d Dep't 2021) ............................ 23

*Sandoval v. Leake & Watts Servs., Inc.*, 192 A.D.3d 91 (1st Dep't 2020) .................................... 8

*Schultz v. Weatherhunters, Inc.*, 24-CV-2852 (ALC), 2025 WL 2781344 (S.D.N.Y. Sep. 30, 2025) ..................................................................................................................................... 21

*Sokola v. Weinstein*, 78 Misc. 3d 842 (N.Y. Sup. Ct. 2023).......................................................... 13

*Spira v. Nat'l Council of Young Isr.*, 231 A.D.3d 987 (2d Dep't 2024)....................................... 25

*T.W. v. City of New York*, 286 A.D.2d 243 (1st Dep't 2001)............................................................ 9

*Truman v. Brown*, 434 F. Supp. 3d 100 (S.D.N.Y. 2020) ............................................................ 18

*United States v. Brand*, 467 F.3d 179 (2d Cir. 2006), *abrogated on other grounds by United States v. Cabrera*, 13 F.4th 140 (2d Cir. 2021)................................................................... 10

*United States v. Daskal*, 21-CR-110 (NGG) (LB), 2023 WL 9424080 (E.D.N.Y. July 12, 2023) ....................................................................................................................................... 10

*United States v. Vickers*, 708 F. App'x 732 (2d Cir. 2017) ......................................................... 10

*Waterbury v. N.Y.C. Ballet, Inc.*, 205 A.D.3d 154 (1st Dep't 2022) ...................................... 9, 14

*Zilioli v. City of New York*, 17-CV-9495 (WHP), 2020 WL 1548763 (S.D.N.Y. Apr. 1, 2020).. 13

**Statutes**

N.Y. Educ. Law § 1125 .................................................................................................................. 19

N.Y. Educ. Law § 1126 ............................................................................................................ 19, 20

N.Y. Educ. Law § 1128 ............................................................................................................ 19, 20

N.Y. Educ. Law § 1129 .................................................................................................................. 19

N.Y. Penal Law § 260.10 ................................................................................................................. 9

N.Y. Penal Law § 260.25.................................................................................................................. 9

**Rules**

Fed. R. Civ. P. 17(a) ................................................................................................. 25

Fed. R. Civ. P. 17(c)(1)(A) ....................................................................................... 25

# PRELIMINARY STATEMENT

Saint Ann's School and its leaders did no diligence before they hired and promoted Winston Nguyen, who had been convicted of endangering the welfare of a vulnerable person. For the next four years, the School retained, enabled, and protected Nguyen as he repeatedly broke School rules by grooming students. He gave them gifts; secreted them away in his illicit School hideaway; visited them at home; and stalked them on social media. When whistleblowers complained, Saint Ann's silenced them.

The predictable, and tragic, happened. Nguyen used School computers and contact lists to insinuate himself into the social media networks of Saint Ann's students—and through those students, met, manipulated, and solicited child sexual abuse material ("CSAM") from two adolescent Brooklyn girls, Jane Doe and Joan Roe. Then, in 2024, Nguyen—from School campus, on School computers, during School time—twice disseminated that CSAM through social media to Saint Ann's students. Saint Ann's found out almost immediately both times. Both times, it failed to report the child sexual abuse to law enforcement, and Nguyen was brought to justice only when Jane and Joan themselves approached prosecutors. Now Nguyen is serving seven years in prison for endangering the welfare of a child—virtually the same crime that the School's leaders knew he had committed before they hired him. But the School and its leaders—together, the "Defendants"—seek to evade liability for their actions and failures to act.

Defendants' motion to dismiss throws eight meritless arguments at the wall, but the core of their defense is the contention that they had no notice of something that they in fact knew in real time: Nguyen was a predator with a track record of exploiting vulnerable people and grooming children. Defendants' own internal investigative report, appended to the Complaint, documents both Nguyen's predations and Saint Ann's enabling: "Nguyen exhibited many behaviors that

1

constitute grooming and had inappropriately close relationships with several students that did not raise concerns at Saint Ann's." Ex. A at 29.[1] Because Defendants knew all along, and because Nguyen perpetrated his crimes on School time and from School property, with School chattels that Defendants gave him, they are liable for negligent hiring, negligent retention, and negligent entrustment of chattels. Because Defendants failed to report Nguyen's dissemination of CSAM, they are liable for negligent infliction of emotional distress. Because each individual School leader exercised control over Nguyen—they were the ones who hired, retained, empowered, coddled, and failed to supervise him—they are individually liable alongside Saint Ann's. And because Defendants are repeat offenders who violated New York State public policy aimed at protecting children by empowering a sexual abuser and actively silencing his critics, they are the prototypical candidates for punitive damages.

## FACTS

***Defendants hire Winston Nguyen without meaningful diligence.*** In August 2020, Maureen Yusuf-Morales, head of the Upper-Middle School at Saint Ann's, a $63,000-a-year Brooklyn private school, recommended that the School hire her "long time [sic] friend" Winston Nguyen. Compl. ¶ 27. She told Dean of Faculty Melissa Kantor that Nguyen had a "financial" crime in his history, but insisted Nguyen had since been "rehabilitated." Compl. ¶ 28, Ex. A at 8. Rather than digging deeper, Kantor rushed Nguyen through the process: within two days, he had been interviewed—though the interviewer was never told about Nguyen's conviction—and hired by then-Head of School Vincent Tompkins. Ex. A at 9.

Defendants did no real diligence. Nobody contacted Nguyen's listed prior employers, even

---

[1] The Complaint incorporates, as Exhibit A, the investigative report (the "Report") that uncovered the negligence of Saint Ann's and its leaders. *See* Motion to Dismiss (MTD) at 2. This Memorandum calls Saint Ann's the "School." The four individual defendants who are or were School leaders—Maureen Yusuf-Morales, Melissa Kantor, Vincent Tompkins, and Kenyatte Reid—are the "School Leaders."

though a cursory check would have revealed that he lied about working at East Harlem Scholars Academy and the Town School. Compl. ¶¶ 30-31. Nobody ran a Google search, which would have revealed Nguyen's prior conviction for endangering the welfare of a vulnerable person. Compl. ¶ 32. Defendants did not even comply with their own policy of completing a background check before hiring a new employee. Compl. ¶¶ 29, 33-34. Nguyen was on campus by August 24, 2020—with a master key, School email, School credentials, and access to the School's information system—before his background check results came back. Compl. ¶ 29; Ex. A at 10, 19.

**_Defendants retain and promote Nguyen, concealing his background from teachers, students, and families._** When they saw Nguyen's background check results that September, Tompkins and Kantor learned that his criminal convictions were not just "financial": he manipulated and exploited vulnerable people in his care. Compl. ¶ 34; Ex. A at 10. But they retained Nguyen without a thorough reference check or even talking to him about his criminal history. Compl. ¶ 35. Defendants cared enough to protect their pocketbooks by restricting Nguyen's access to the School's financials and credit cards, but implemented no guardrails to protect students. Ex. A at 12. Instead, Kantor and Yusuf-Morales "aggressively lobb[ied]" in early 2021 to secure Nguyen a student-facing teaching role. Compl. ¶ 38. When department heads were told about Nguyen's past, though, they refused to bring him on. Compl. ¶ 37. So Kantor and Yusuf-Morales simply stopped telling people. Their deceit succeeded, and Nguyen was given a class for the 2021–2022 school year. Compl. ¶¶ 36-38; Ex. A at 10-11. A few months later, when students and teachers learned about Nguyen's history through internet searches, Defendants minimized his convictions, labeling them as "financial." Compl. ¶ 54; Ex. A at 9-11, 15.

**_Nguyen grooms students._** The School's internal investigative report, compiled by lawyers at Debevoise & Plimpton after Nguyen was arrested, explains that "[g]roomers use strategies such

3

as bribery, gifts, and extra privileges to earn the affection of children." Ex. A at 29. The Report shows that Nguyen, throughout his time at Saint Ann's, deployed the whole gamut of grooming strategies, and the Complaint pleads his grooming behavior in detail. Compl. ¶¶ 40-57. He commandeered a space as an illicit personal office, in violation of School policies, gave his favored students the key, and let them hang out in his lair and skip class. Ex. A at 17. He stocked a School supply closet with snacks, and showered students with "snacks during classes, including pencil cases full of candy." *Id*. at 18. He transgressed boundaries again and again, even keeping clothes at the School and sleeping there against School rules. *Id*. at 16. He lavished "gifts and prizes" on his students. *Id*. at 19. He took students off-campus for coffee, ice cream, and even a high-end dinner. *Id*. at 18-19. He used the School directory to find students' home addresses, and showed up unannounced at their homes. *Id*. at 19. He tutored favored students off-campus and in late-night Zoom calls. *Id*. at 20. He ran an unsanctioned summer camp for his favored students on School grounds. *Id*. at 20-21. And he broke School rules by contacting students inappropriately on social media and by text message. *Id*. at 20-21.

***Defendants know about Nguyen's grooming in real time.*** Defendants knew about all this. Yusuf-Morales knew about his illicit lair, but thought taking it away would be "unnecessarily punitive." Ex. A at 17. Kantor knew he was sleeping at the School, *id*. at 16, but nobody ever took away his access: when he was arrested, Nguyen had nearly 30 keys to various School offices and storage spaces, and a master key to all classrooms. *Id*. at 27. Yusuf-Morales knew that he was violating the School's social media policies, but took no disciplinary action. *Id*. at 20. Kantor, Yusuf-Morales, and Reid knew about the unsanctioned summer camp, but Kantor argued successfully against termination. *Id*. at 21. The Leaders knew that Nguyen was lavishing gifts and snacks on students—grooming that the Report characterized as a "serious red flag." *Id*. at 30.

4

Kantor, the Report found, "recognized that Nguyen was unwilling or unable to follow rules or maintain professional boundaries." *Id*. at 18.

***Defendants enable Nguyen and silence his critics.*** Even though they knew all this, Defendants actively empowered Nguyen and silenced his critics. Few teachers were given the access that the Leaders readily gave Nguyen: "one witness," the Report found, "described administrators' reliance on and support for Nguyen as the 'Cult of Winston.'" *Id*. at 30. When students complained, Defendants condemned them for not "supporting restorative justice." *Id*. at 14. When one student asked Saint Ann's to let him out of Nguyen's class, Saint Ann's forced him to sit one-on-one with Nguyen to "work through the student's concerns" that Nguyen posed a danger to the community. *Id*. When parents complained, Tompkins "disregarded and shamed them." *Id*. at 32. A senior administrator told Tompkins that Nguyen was "dangerous," and "trying to…ingratiate himself," the "same motivation that had led to his prior conviction." *Id*. at 31. Another teacher complained that Nguyen was "lying." *Id*. Defendants did nothing to Nguyen, but cracked down on the whistleblowers, imposing a "culture of fear." *Id*. at 30. According to the Report: "Many witnesses believed that Nguyen was protected by Yusuf-Morales, and that Yusuf-Morales was in turn protected by Tompkins." *Id*. at 31.

The School Leaders protected Nguyen and protected themselves. Rather than reining in Nguyen's repeated boundary-crossing behaviors, Kantor asked to be relieved of the responsibility of supervising him. *Id*. at 18. In spring 2022, Yusuf-Morales was made Nguyen's sole supervisor—because nobody else was willing to do it. *Id*. And while Reid placed Nguyen on a performance improvement plan—Kantor was tasked with monitoring his compliance—Reid declined to terminate him, even though he knew that Nguyen did not understand that he had done anything wrong. *Id*. at 22; *see also* Compl. ¶¶ 15, 127-128.

***Nguyen twice disseminates CSAM of Joan and Jane—from School grounds, using School equipment, on School time.*** Around the fall of 2022, Nguyen used student information he procured from the School's information systems to connect with Saint Ann's students via Snapchat, pretending to be a 16-year-old boy. Compl. ¶¶ 58-59. Through these Saint Ann's contacts, he insinuated himself into the trust of Joan and Jane—two adolescent eighth-graders who were friends with Saint Ann's students, and only accepted social media friend requests from people who were already in their circle. *Id.* at ¶¶ 60-61. Over the next months, Nguyen built relationships with Jane and Joan through his fake persona, exploited their vulnerabilities, and eventually solicited explicit images from them. Compl. ¶¶ 63-69. After months of sending CSAM to Nguyen—including naked pictures of themselves performing sex acts—Jane and Joan distanced themselves in the summer and fall of 2023. Compl. ¶ 70.

In early 2024, Nguyen retaliated. Around February 5, 2024, Nguyen sent Saint Ann's students and others the CSAM he had collected of Jane, Joan, and several Saint Ann's students. Compl. ¶ 72. He sent the CSAM from the School's campus; to a network of School students whose contact information the School had entrusted to him; during School hours; while on the job as a School teacher; and using School internet facilities, resources, and access privileges. Compl. ¶ 73. The CSAM showed the girls' faces and identified them by name. Compl. ¶ 73.

***Defendants fail to report child abuse to law enforcement.*** Defendants found out almost immediately about Nguyen's dissemination of CSAM, but they did not report to law enforcement or to the girls' families. Compl. ¶ 77. When Nguyen disseminated a second round of CSAM around April 19, 2024, Defendants only told their own students' families. Compl. ¶ 77. Jane and Joan, though, went to the police and cooperated with prosecutors. On March 3, 2025, their victim impact statements were read in court when Nguyen was sentenced to serve seven years in prison for

endangering the welfare of children—all while Saint Ann's did nothing. Compl. ¶¶ 79-80.

## ARGUMENT

**I. Defendants are liable for negligently hiring and retaining Nguyen.**

Defendants raise three unavailing arguments against Plaintiffs' negligent hiring and retention claims.[2] *First*, they contest the "propensity" element—also called the "foreseeability" or "notice" element—of the tort.[3] But of course Defendants were on notice of Winston Nguyen's propensity to commit virtually the same crime he had committed before, using the grooming techniques that Defendants witnessed and enabled for four years. *Second*, Defendants bemoan the lack of a "nexus between the School and Jane and Joan." MTD at 13. But they misstate the law, which requires no such nexus, to smuggle in a nonexistent duty requirement. *Third*, they contend that the counts are duplicative—but hiring and retention are not the same thing.

**A. Defendants were on notice of Nguyen's crimes and grooming.**

Defendants say they could not have foreseen that Nguyen would groom and exploit Jane and Joan, even though they knew about his criminal history of exploiting vulnerable people and his years of grooming Saint Ann's students. *See supra* at 2-6 (detailing Defendants' real-time knowledge). To write that sentence is to refute it. New York law holds an employer liable "when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." *Detone v. Bullit Courier*

---

[2] The parties agree that, to plead claims for negligent retention, hiring, promotion, and supervision under New York law, a complaint must plausibly allege "(1) the existence of an employment relationship; (2) that Defendants knew or should have known of the employee's propensity for the conduct that caused the injury; and (3) a causal nexus between the negligent supervision and the injury." *Lee v. Albarran*, 23-CV-11215 (NSR), 2026 WL 686156, at *8 (S.D.N.Y. Mar. 11, 2026); MTD at 7 (citing *Lee* for the elements of those torts).

[3] Defendants also assert that the foreseeability element is "narrower than in ordinary negligence," but do not explain how. Instead, they argue that Plaintiffs fail to meet this narrow standard because there is no "alternative predicate duty that the Saint Ann's defendants would have owed to the plaintiffs." As discussed *infra* at 12, duty is not an element of negligent hiring or retention under New York law.

*Serv., Inc.*, 140 A.D.2d 278, 279 (1st Dep't 1988). That knowledge is exactly what Plaintiffs pled.

Foreseeability is the touchstone: "The employer's negligence lies in his having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring and retention of his employees." *Id*. An employer should foresee (and forestall) an employee's bad behavior when the employer has actual or constructive notice of prior "similar" conduct. *Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 159 (2023). Defendants do not contest that they were on notice of Nguyen's prior conviction and years of grooming behavior—including violating rules against contacting children on social media. They just confuse *similar* with *identical*. *See Sandoval v. Leake & Watts Servs., Inc.*, 192 A.D.3d 91, 99 (1st Dep't 2020) ("An employer may be liable for negligent hiring when it knew or should have known of the employee's propensity to commit injury even if the injury committed was not identical to the prior injury.") (internal citations omitted). But both Nguyen's prior conviction and his conduct at Saint Ann's were relevantly similar under controlling law.

Start with Nguyen's prior conviction. Defendants failed to take reasonable care when they violated their own policies and skipped a background check before hiring Nguyen, despite knowledge of his criminal history. *See supra* at 2-3. That failure, itself, is negligence. *See, e.g.*, *Sandoval*, 192 A.D.3d at 99–100 (finding negligence based in part on defendant's failure to check employees' professional references in violation of its own policy); *Kenneth R. v. Roman Cath. Diocese of Brooklyn*, 229 A.D.2d 159, 163 (2d Dep't 1997) (duty to investigate or institute specific hiring procedures is triggered when the employer "knows of facts that would lead a reasonable person to investigate the prospective employee"). But even setting that aside: Defendants concede that they knew of Nguyen's conviction for endangering the welfare of a vulnerable person as early

as September 2020. MTD at 4. Both Nguyen's background check—which was returned after he was hired—and a cursory Google search would have revealed that Nguyen had been convicted of violating N.Y. Penal Law § 260.25, which makes it a crime to "knowingly act[] in a manner likely to be injurious to the physical, mental or moral welfare of a person who is unable to care for himself or herself because of physical disability, mental disease or defect."

Six years later, thanks to Defendants' negligence and enabling, Nguyen was convicted of five counts of a virtually identical charge: endangering the welfare of a child under N.Y. Penal Law § 260.10, which makes it a crime to "knowingly act[] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old." All the elements of the crime are identical except for the reason the victim is unusually vulnerable. New York courts have found foreseeability on far less. *See, e.g.*, *T.W. v. City of New York*, 286 A.D.2d 243, 244–45 (1st Dep't 2001) (an employer's knowledge of an employee's prior convictions for robbery, assault, theft, burglary, and drug offenses established foreseeability of risk to children, supporting liability for the employee's later sexual assault of a child).[4] Indeed, Nguyen's crimes at Saint Ann's were not just foresee*able*. They were actually fore*seen*. The investigation report shows how a "senior administrator" told Defendant Tompkins that Nguyen was replicating the behavior that led to his prior conviction, and that Nguyen was "dangerous." Ex. A at 31. Tompkins did nothing.

Next: the years of grooming that Defendants knew about, enabled, and did not prevent, as detailed at length in the Complaint and *supra* at 3-6. Courts recognize grooming as "a way in

---

[4] *See also, e.g.*, *Moore Charitable Found.*, 40 N.Y.3d at 160 (plaintiffs adequately pled notice of bank employee's propensity to commit $25 million fraud where employee allegedly made statement about deal fee that colleagues "should have recognized . . . as either false or questionable"); *Waterbury v. N.Y.C. Ballet, Inc.*, 205 A.D.3d 154, 160–61 (1st Dep't 2022) (plaintiff adequately pled employer knew of dancer's propensity to disseminate revenge porn based on known incidents of degrading comments about other dancers and plying underage girls with drugs and alcohol); *Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d 505, 519–20 (S.D.N.Y. 2004) (employer's receipt of report alleging sexual harassment was sufficient to plead notice of propensity to commit rape and sexual abuse).

which adults seeking to have sexual relationships with minors prime their victims to enter into a sexual relationship." *United States v. Daskal*, 21-CR-110 (NGG) (LB), 2023 WL 9424080, at *10 (E.D.N.Y. July 12, 2023) (citing *United States v. Vickers*, 708 F. App'x 732, 736–37 (2d Cir. 2017)). While grooming may take many forms, the common thread is "a strategic pattern including 'manipulation or coercion short of physical force' used to make the target vulnerable to abuse." *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 665 (S.D.N.Y. 2024) (internal citations omitted); *see also United States v. Brand*, 467 F.3d 179, 203 (2d Cir. 2006), *abrogated on other grounds by United States v. Cabrera*, 13 F.4th 140 (2d Cir. 2021) (describing sharing pictures, flirting, and attempting to gain affection as "classic 'grooming' behavior in preparation for a future sexual encounter").

The Administrators should have recognized, as numerous courts have, that a pattern of grooming behavior makes sexual abuse "foreseeable" for purposes of negligent employment liability. *See, e.g.*, *Brophy v. Big Bros. Big Sisters of Am., Inc.*, 224 A.D.3d 866, 868 (2d Dep't 2024) (plaintiff adequately alleged that sexual abuse by defendant's volunteer was foreseeable for negligent supervision claim where complaint alleged volunteer groomed plaintiff and exhibited pattern of predatory behavior with multiple children); *Farrell v. U.S. Olympic & Paralympic Comm.*, 567 F. Supp. 3d 378, 384, 389 (N.D.N.Y. 2021) (denying motion to dismiss negligence claim where plaintiff alleged sexual abuse was foreseeable result of employee's known attraction to young women and demonstrated pattern of disproportionate interest in underage skaters). In fact, grooming is such a clear indicator of potential abuse that abuse preceded by grooming is foreseeable even when the abuse itself does not occur within the scope of employment or on the employer's premises. *See, e.g.*, *PB-20 Doe v. St. Nicodemus Lutheran Church*, 228 A.D.3d 1233, 1237, *reargument denied*, 230 A.D.3d 1594 (4th Dep't 2024) (fact that sexual abuse did not occur

on employer-owned property did not make harm unforeseeable where off-premises abuse was preceded by pastor's grooming while engaged in role as employee).

Defendants, though, cite an irrelevant line of cases purporting to show that that an employee's troubling behavior is insufficient to forewarn employers of eventual sexual assault. MTD at 7-9. Nobody disputes that physical assault is a pronounced escalation from inappropriate workplace behavior. But no such assault is alleged here. Nguyen's exploitation of Jane and Joan used precisely the same means of manipulation and fraud that he employed in his victimization of his former employers and in his grooming of Saint Ann's students—including grooming through social media policy violations. Unlike in the cases Defendants cite, Nguyen's ultimate tort against Jane and Joan did not involve marked deviation from his prior behavior.

Defendants' attempt to dismiss Nguyen's grooming behavior as not "sexual in nature," and therefore insufficient for notice, is equally unpersuasive. Defendants cite two cases in which reports of unusual teaching methods and "untrustworthy" character were found insufficient to establish notice of employees' propensities to commit sexual assault. MTD at 12 (citing *Doe v. Poly Prep Country Day Sch.*, 20-CV-04718 (DGPK), 2022 WL 4586237 (E.D.N.Y. Sep. 29, 2022); *Greenwood v. Am. Kennel Club*, 23-CV-10516 (GHW), 2026 WL 1113381 (S.D.N.Y. Apr. 24, 2026)). Again, those cases are easily distinguishable because no physical assault is alleged here. And the School was on notice of much more than unorthodox teaching dynamics or vague character attacks. The School's own investigators found that Nguyen's behavior, which Defendants knew all about, was precisely the type of grooming that predators employ to build trust with their victims. Ex. A at 29. That Defendants chose to empower him and silence his critics does not make the consequences any less foreseeable.

**B. Defendants' "nexus between the parties" test does not exist in New York law.**

The Complaint's negligent employment claims do not, as Defendants mistakenly contend, require a "sufficient 'nexus' between the parties." MTD at 13. To state a claim for negligent hiring or retention, under Defendants' own authority, Plaintiffs need only properly plead an employment relationship, foreseeability, and "a causal nexus *between the negligent supervision and the injury*." *Lee*, 2026 WL 686156, at *8 (emphasis added); MTD at 7 (citing *Lee* for the elements).

A nexus "between the parties" is an element of Defendants' invention—and, perhaps, an attempt to smuggle in duty through the backdoor. Pleading a special relationship between the plaintiff and the defendant is a prerequisite only for a duty-based tort. But the employer's duty towards the plaintiff is not an element of negligent hiring and retention under New York law. *Montague v. Williams*, 21-CV-4054 (MKB), 2023 WL 2710320, at *12 (E.D.N.Y. Mar. 30, 2023) (a negligent hiring claim "differs from the elements required to prove a claim of general or gross negligence because plaintiff need not prove that defendants owed them a duty of care."). Instead, for negligent hiring and retention torts, the relevant nexus is the relationship between the tortfeasor's employment and the tort. *See Doe 7015 v. Elektra Ent. Grp. Inc.*, 21-CV-6868 (JPC), 2023 WL 2744102, at *6 (S.D.N.Y. Mar. 31, 2023) (to state a claim for negligent hiring or supervision of an employee who commits a sexual battery, plaintiff must establish a "nexus between the alleged attacker's *employment* and the sexual assault.") (internal citations omitted).

Plaintiffs have pled just such a nexus between Nguyen's employment and their injury. Compl. ¶¶ 58-61, 72-73. Defendants not only placed Nguyen in a student-facing role at Saint Ann's, but also gave him access to the student directory and other identifying information. *See* Compl. ¶ 58. That information allowed him to ingratiate himself with Saint Ann's students and to find them on Snapchat. Compl. ¶¶ 59-60. And were it not for Nguyen's initial connection to those Saint Ann's students, in the guise of "hunterkristoff," Jane and Joan never would have encountered

12

Nguyen—and they certainly would not have entertained his outreach. Compl. ¶¶ 60-62.

Possibly, rather than inventing a new element, Defendants—without ever using the term—mean to prematurely contest proximate causation, which all agree is an element here. If so, they are out of luck, since "it is well-established that the issue of proximate causation is fact laden and inappropriate for a motion to dismiss at the pleadings stage." *In re GEICO Customer Data Breach Litig.*, 691 F. Supp. 3d 624, 632 (E.D.N.Y. 2023) (internal citations omitted); *Zilioli v. City of New York*, 17-CV-9495 (WHP), 2020 WL 1548763, at *10 n.7 (S.D.N.Y. Apr. 1, 2020) ("[U]nder New York law, proximate cause is normally an issue for the factfinder to resolve in negligence actions.").

Even if proximate cause were properly considered now, it is adequately pled. To carry their prima facie burden on proximate cause, Plaintiffs need only "show that the defendant's negligence was a substantial cause of the events which produced the injury… Plaintiff need not demonstrate, however, that the precise manner in which the accident happened, or the extent of injuries, was foreseeable." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980); *see also Hain v. Jamison*, 28 N.Y.3d 524, 528–29 (2016) (relying on *Derdiarian*, and adding that "the question of whether a particular act of negligence is a substantial cause of the plaintiff's injuries is one to be made by the factfinder.").

Defendants here do not even bother arguing that their hiring and retaining of Winston Nguyen was anything other than a "substantial cause" of Jane and Joan's injuries. New York courts have held employers liable in situations just like these. *See, e.g.*, *Sokola v. Weinstein*, 78 Misc. 3d 842, 856–57 (N.Y. Sup. Ct. 2023) (finding adequate causal nexus where plaintiff alleged she only met with defendant's employee, a prominent film producer, to discuss film roles because of his influence in the film industry). The harm suffered need not be related to the employer's business

activities, or even occur within the scope of the tortfeasor's employment. *Waterbury*, 205 A.D.3d at 162; *Gonzalez v. City of New York*, 133 A.D.3d 65, 69–70 (1st Dep't 2015). For example, in *Waterbury*, a student at defendant's ballet school alleged that a school employee disseminated intimate images of her to other employees, without her consent. 205 A.D.3d at 157. She also alleged that the school was aware of that employee's propensity to exploit and degrade young women, based on multiple instances of inappropriate comments and interactions with young female dancers, and did nothing to stop his behavior. *Id*. at 160–161. The court held that the student adequately pled a nexus between defendant's negligent supervision and the harm she suffered, because the employee shared the images while present on the defendant's premises as an employee, with other employees of the defendant. *Id*. at 162–64.

Defendants, meanwhile, rely on puzzlingly inapposite precedent. They cite, for instance, to *Doe v. Hauppauge Union Free Sch. Dist.*, where the teacher's "employment with the district and the subject incident… were separated by time, place, and the [teacher's] intervening independent acts." 213 A.D.3d 809, 811 (2d Dep't 2023). The same is true of all Defendants' other cases: they are relevant only to a world where Plaintiffs pled something far different than they, in fact, pled. But Plaintiffs did not plead a separation of time and place or any intervening actor. Instead, Nguyen abused Jane and Joan and disseminated their CSAM to School students, from School property, on School time, with School equipment. Compl. ¶ 73. Under any reading—even Defendants' misstated "nexus" test—Plaintiffs prevail here.

### C. The negligence counts are not duplicative.

"Under New York law, claims are duplicative when both arise from the same facts and seek identical damages for each alleged breach." *Montague*, 2023 WL 2710320, at \*11 (internal citations omitted). Defendants assert that counts VI and VII are duplicative because each relies on

the premise that "Saint Ann's School should not have employed Nguyen" and "had multiple decision-points when they could… have determined that Nguyen cannot work at the school." MTD at 19. Their argument rebuts itself: the "multiple decision-points" require proof of different facts, and give rise to different torts. That is why, in *Montague*, an Eastern District court held that multiple negligence claims, including hiring and retention, were not duplicative: while they "contain overlapping elements… they also require slightly different facts to be pleaded to make out each claim." 2023 WL 2710320, at *12. "[V]arious federal and state courts have permitted multiple negligence claims with different facts and theories to proceed past the motion to dismiss stage." *Id*. at *13 (collecting cases, including a case Defendants use to support their duplicativeness argument, *C.Q. v. Est. of Rockefeller*, 20-CV-2205 (VSB), 2021 WL 4942802 (S.D.N.Y. Oct. 21, 2021)).

## II. Defendants are liable for negligently entrusting Nguyen with School chattels.

Defendants throw the kitchen sink at Plaintiffs' negligent entrustment claim, Count VIII. *First*, they advance a variant on their meritless foreseeability argument. *Second*, they contend that Count VIII duplicates the negligent hiring and retention counts. But negligent entrustment involves different facts than pure negligent retention. *Third*, Defendants quarrel with the Complaint, insisting that Nguyen did not actually use School chattels to commit his torts. As alleged, he did.

### A. Nguyen's misuse of School chattels was foreseeable.

Under New York law, the "foreseeability" requirement of a negligent entrustment claim is satisfied where "defendant had some special knowledge concerning a characteristic or condition peculiar to the person to whom a particular chattel is given which renders that person's use of the chattel unreasonably dangerous." *Graham v. Jones*, 147 A.D.3d 1369, 1371 (4th Dep't 2017) (internal citations omitted). Special knowledge may be established by the presence of "red flags"

or constructive knowledge—what defendants should have known. *See, e.g.*, *Earsing v. Nelson*, 212 A.D.2d 66, 70 (4th Dep't 1995).

Of course Nguyen's misuse of School chattels was foreseeable. Defendants knew that Nguyen misused the School's master key to improperly repurpose School spaces as a snack and candy closet and a "hang out" space for students to cut class. Compl. ¶¶ 41, 42, 45. They knew that he accessed student files to locate students' home addresses and visit them unannounced. Compl. ¶ 46. They knew he misused his keys to host unauthorized summer camps on School campus in 2022 and 2023, and to sleep over at the School. Compl. ¶¶ 47, 50. They knew he violated the School's social media policies. Compl. ¶¶ 43, 48, 52. Armed with this knowledge, Saint Ann's should have known better than to entrust Nguyen with its keys, contact lists, and computers, which he used to groom Jane and Joan in the same way that—according to the School's own investigators—he groomed School students.

## B. The chattels count is not duplicative.

Defendants cite no case in which a court struck a negligent entrustment claim as duplicative of a negligent hiring claim, and Plaintiffs could find none. To the contrary, negligence theories "contain[ing] overlapping elements" but "also requir[ing] slightly different facts" are distinct. *Montague*, 2023 WL 2710320, at \*12.[5] Here, the facts needed to plead that Nguyen *used* Saint Ann's chattels are different than the facts necessary to plead that *Saint Ann's negligently entrusted him with those chattels*. The Complaint musters additional facts in support of the negligent entrustment—including, for instance, that Saint Ann's had policies specifically designed to bar Nguyen from using the chattels in the way that he did. Compl. ¶ 141.

---

[5] Even if duplicative of other negligence claims, Fed. R. Civ. P. 8(d)(2) allows a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically[.]" *See Ranta v. City of New York*, 481 F. Supp. 3d 115, 121 (E.D.N.Y. 2020) (allowing alternative theories of liability in employment context to survive a motion to dismiss).

**C. Nguyen used School chattels to distribute CSAM of Jane and Joan.**

Defendants cite *Haybeck*, which is doubly inapposite. MTD at 16-17. Contrary to Defendants' contentions, MTD at 17, *Haybeck* is not a negligent entrustment case: it discussed the tortfeasor's use of the defendant's chattels in the context of scope of employment for purposes of vicarious liability, which is not at issue here. *Haybeck v. Prodigy Services Co.*, 944 F. Supp. 326, 327 (S.D.N.Y. 1996). Anyhow, *Haybeck* rejected liability only where "the conduct complained of… unquestionably took place outside the employer's premises and without the employer's chattels." *Id*. at 332.[6] But the Complaint alleges that Nguyen used the School's chattels when he distributed CSAM of Jane and Joan: he was on Saint Ann's campus during school hours in his capacity as a Saint Ann's teacher using a Saint Ann's network. Compl. ¶ 73.

**III. Defendants are liable for negligent infliction of emotional distress.**

**A. The Complaint adequately pleads both special circumstances and duty.**

Defendants—School Leaders and a School that proudly champion its progressive values—disavow their responsibility to the children of the greater Brooklyn community. If a child has not ascended into the ivory tower, the School owes them nothing. Joan and Jane—girls abused by a Saint Ann's teacher, who found them through the School network and then disseminated their CSAM from School campus on a school day—are just throwaways who "happened to reside in and around Brooklyn." MTD at 17-18.

New York law does not let Defendants off that easily. To make out an NIED claim, "a plaintiff must plead… facts making out one of three 'theories': (1) a bystander theory, (2) a direct duty theory, or (3) a special circumstances theory." *Truman v. Brown*, 434 F. Supp. 3d 100, 122–

---

[6] Defendants' other cited case does not support their argument, either. *Finkel v. Dauber* held that a computer is not "a dangerous instrument in the hands of teenagers." 29 Misc. 3d 325, 330 (Sup. Ct. 2010). Nguyen is an adult criminally convicted of endangering the welfare of children, who was repeatedly caught engaging in grooming behaviors, including inappropriate social media contact.

23 (S.D.N.Y. 2020). Plaintiffs' NIED claim survives under either a special circumstances theory or a direct duty theory.

*First*, New York "recognizes specific 'special circumstances' cases for NIED where there is 'an especial likelihood of genuine and serious mental distress, arising from… special circumstances, which serves as a guarantee that the claim is not spurious.'" *Truman*, 434 F. Supp. 3d at 123; *see also Johnson v. United States*, 759 F. Supp. 3d 425, 452 (S.D.N.Y. 2024) (special circumstances carry a NIED claim "even in the absence of a direct duty.") (internal citations omitted). Courts find special circumstances where a defendant possessed, and negligently mishandled, uniquely devastating information about a plaintiff; normal care could have protected the plaintiff from injury through dissemination of that information; the subject matter is so inherently distressing that plaintiff's emotional distress is unquestionably genuine; and the injury is dignitary, divorced from physical impact. So, for instance, examples of special circumstances include "a hospital negligently informing an individual that her parent had died; a negligent misdiagnosis of HIV; and the mishandling of a loved one's remains." *Truman*, 434 F. Supp. 3d at 123 (internal citations omitted).

Those examples map tightly onto the Complaint's allegations. Just as with the HIV misdiagnoses and the mistaken information about a parent's death: the School had uniquely devastating information about Joan and Jane—images of their sexual abuse. Through normal care, it could have prevented further dissemination. All Defendants had to do, after the first wave of disclosure, was go to law enforcement—a step every adult of good faith knows to take when they find CSAM. And nobody can question the devastating mental anguish inflicted on a 13-year-old child by the involuntary dissemination of her most private images. *See Brown v. New York Design Ctr., Inc.*, 215 A.D.3d 1, 6 (1st Dep't 2023) (finding special circumstances where intimate

18

nonconsensual videos were made, since "it is not known whether additional copies of the videos exist, who may be in possession of the videos and whether the videos may ultimately be posted on any number of Internet sites.").

*Second*, Defendants had a statutory duty. Courts applying New York law have consistently held that defendants may be liable for negligent infliction of emotional distress where they breach a statutorily-created legal duty to plaintiffs, and the statute can impose the duty even where it does not create an independent cause of action. *See, e.g.*, *Ho v. Pierpont Rsrvs. Ltd.*, 18-CV-9940 (DABSN), 2020 WL 1644008, at *5 (S.D.N.Y. Apr. 2, 2020) (denying motion to dismiss NIED claim where statute did not "create the cause of action" because the statute "create[d] the legal duty on which the cause of action resides."). Schools and their leaders are statutorily bound to promptly report suspected child abuse to law enforcement "upon receipt of an allegation of child abuse in an educational setting" by a school "employee or volunteer." N.Y. Educ. Law §§ 1126, 1128. Failure to properly report is a criminal misdemeanor. *Id*. at § 1129. Abuse, per § 1125, includes "(d) the commission or attempted commission against a child of the crime of disseminating indecent materials to minors." An educational setting, under the same statute, includes "the building and grounds of a school."

This case falls under the reporting requirements of §§ 1126 and 1128. The Complaint alleges Nguyen (a School employee) disseminated indecent materials of Jane and Joan to minors (abuse) from School campus (an educational setting). Compl. ¶¶ 72-77. And the School officials unquestionably received credible allegations of that abuse: on February 5, 2024, Defendants learned that several minors—including Jane and Joan, whose faces and names were visible—were the subject of CSAM that was circulated among Saint Ann's students, across Saint Ann's campus, during school hours. Compl. ¶¶ 73, 87; Ex. A at 33. At the time, Saint Ann's employees

"suspect[ed] that the accounts [which distributed the CSAM] were run" by someone at Saint Ann's since the "owner of the accounts appeared to have information about the students' relationships at the School." Ex. A at 33. Even so, Defendants did not report the CSAM to law enforcement, in contravention of § 1128.[7] Then, on April 19, 2024, Saint Ann's learned that another wave of CSAM was released to Saint Ann's students. Compl. ¶¶ 76-77; Ex. A at 33-34. Defendants were once again on notice that children were being exploited, and once again told no one other than select students' families, in violation of § 1126 and § 1128. Compl. ¶¶ 74-77; Ex. A at 34.[8]

## B. The NIED count is not duplicative.

Negligent infliction of emotional distress survives as a claim distinct from underlying negligent hiring and retention. The negligent hiring/retention claims seek redress for defendants' failure to prevent grooming and sexual abuse, and the negligent infliction of emotional distress claim seeks redress for defendants' disregard of the resulting emotional harm. *Farrell*, 567 F. Supp. 3d at 389-90 (denying motion to dismiss NIED claim as duplicative). After enabling Nguyen's access to the girls, Defendants failed to intervene once they learned of the leaked CSAM, to mitigate further dissemination, and to alert the required authorities and families. Compl. ¶¶ 74-78; Ex. A at 33-34.

## IV. The School Leaders are individually liable because each leader exercised the requisite control over Nguyen.

Defendants contend that the Leaders cannot face individual liability because none of them,

---

[7] Defendants may respond that they do not fall within the letter of the law because they did not yet know a teacher was responsible. But the law does not require certainty: it requires only "an allegation." And Defendants should not be rewarded for their willful blindness to Winston Nguyen's history of manipulation, grooming, and social media policy violations. If they did not know, it was because they did not want to know.

[8] Defendants mistakenly argue that Plaintiffs cannot plead NIED unless Jane and Joan feared for their physical safety. That is not the law in New York when a plaintiff's intimate images are disclosed without their consent. *Hering v. Lighthouse 2001, LLC*, 21 A.D.3d 449, 451 (2d Dep't 2005) (rejecting the argument that plaintiffs, who alleged illicit surveillance in a women's bathroom, needed to show physical injury.)

individually, was Nguyen's employer. *See* MTD at 14-15. But New York law allows a claim for negligent supervision to proceed against individual defendants if there are "allegations supporting the inference that the 'defendants exercised a high degree of control over the principal tortfeasors.'" *Schultz v. Weatherhunters, Inc.*, 24-CV-2852 (ALC), 2025 WL 2781344, at *4 (S.D.N.Y. Sep. 30, 2025) (quoting *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 131 (2d Cir. 2023)). Courts have applied the same criterion to negligent hiring, promotion, and retention claims. *See, e.g.*, *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 567–68 (E.D.N.Y. 2021) (denying motion to dismiss negligent hiring, retention, and supervision claims against school leader who rehired tortfeasor despite having notice of his dangerous propensities); *Doe Three v. KIPP Acad. Charter Sch.*, 235 A.D.3d 406, 408 (1st Dep't 2025) (denying motion to dismiss where individual defendants had a role in "hiring, training, supervising, or policymaking during the relevant time… with respect to [tortfeasor]."); *Doe 42 v. Yeshiva Univ.*, 245 A.D.3d 545, 546 (1st Dep't 2026) (denying motion to dismiss individual liability claims where school official, "a person in a position of authority at defendant institutions, knew or should have known of the alleged abuser's propensities to commit sexual abuse and either condoned them or covered them up[].").

The Complaint and the incorporated Report more than adequately establish that the School Leaders had the requisite control over Nguyen. With respect to the negligent hiring and promotion claim, Tompkins, then-Head of School, made the final decision to hire Nguyen, despite the School's lack of diligence. Ex. A at 9; Compl. ¶ 117. Yusuf-Morales, then-Head of the Upper-Middle School, referred Nguyen for the position; fast-tracked his application with her recommendation and advocacy to the hiring team; and misrepresented his prior conviction. Ex. A at 9; Compl. ¶¶ 17, 27, 28, 117. Kantor was the dean charged with leading a hiring effort for temporary employees. Ex. A at 8; Compl. ¶¶ 16, 117. She approved expediting Nguyen's hiring

process and then greenlit his hiring for Tompkins's approval without the required background check. Ex. A at 9-10.

The School Leaders were equally involved in, and equally controlled, the negligent retention and supervision. Tompkins and Kantor retained Nguyen even after his background check results arrived, revealing the full scope of his criminal misconduct. Ex. A at 10; Compl. ¶¶ 34-36. Tompkins also personally appointed Nguyen's direct supervisors and decided to restrict Nguyen's access to the School's financials and credit cards—but not to students. Ex. A at 12, 18; Compl. ¶ 36. Kantor and Yusuf-Morales sought—and found—a teaching placement for Nguyen by dint of actively concealing his conviction. Ex. A at 13; Compl. ¶¶ 37-38. Kantor and Yusuf-Morales also served as Nguyen's direct supervisors, and Kantor was charged with monitoring Nguyen's compliance with his performance improvement plan. Ex. A at 18, 21-22; Compl. ¶¶ 16-17, 117, 127. Reid, as the Head of School, had the power to discharge Nguyen, which he declined to use even after learning that Nguyen ran an unauthorized math camp and even though he knew that "Nguyen … did not seem to appreciate what he had done wrong." Ex. A at 22; *see also* Compl. ¶¶ 15, 127-128. In sum: the Complaint adequately alleges facts showing that each School Leader exercised sufficient control over Nguyen to support individual liability.

## V. Plaintiffs will be entitled to punitive damages.

This is the prototypical case for punitive damages. The Defendants' conduct was reckless and egregious. They actively enabled Nguyen's grooming and silenced whistleblowers.[9] They contravened clear New York State public policy. And they are repeat offenders.

---

[9] Here again, Defendants' (halfhearted) argument depends on rewriting and minimizing the Complaint. "The reality," they insist, "is that the claim against the Saint Ann defendants arises from their alleged failure to discover that Nguyen was a danger to Jane and Joan." MTD at 21. That may be the claim that Defendants wish they were confronting, but as pled Defendants didn't just "fail to discover" Nguyen's misconduct. They knew he was grooming students; actively empowered his grooming; silenced whistleblowers; and then covered it up.

Defendants do not bother contesting their contravention of public policy and their recidivism. Instead, they argue, *first*, that their conduct "lacks any indicia of gross[] negligen[ce]." MTD at 22. *Second*, they claim they could not have "foreseen the danger based on Nguyen's prior conduct alone." MTD at 21. Both theories fail: Nguyen posed a foreseeable danger for the reasons articulated in Section I.A, above, and Defendants' conduct easily clears the punitive damages bar.

***Defendants recklessly disregarded Jane and Joan's rights.*** New York courts award punitive damages for negligence torts where defendants' conduct evidences "conscious disregard of the rights of others or for conduct so reckless as to amount to such disregard." *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 200 (1990). In the context of negligently hiring and supervising child abusers, New York courts have found the requisite recklessness where defendants knew of the offender's propensity and still gave them access to children; where defendants silenced whistleblowers; and where, by "underrespond[ing]" to reports of abuse, defendants put their self-interest ahead of the rights of others. *Doe 42*, 245 A.D.3d at 546 (silencing whistleblowers); *C.R. v. Episcopal Diocese of N.Y.*, 248 A.D.3d 1, 15 (1st Dep't 2025) (underresponding); *Pisula v. Roman Cath. Archdiocese of N.Y.*, 201 A.D.3d 88, 105 (2d Dep't 2021) (placing known abuse risk in position to access children).

Defendants hit the trifecta. They had notice of Nguyen's grooming behaviors from parent and teacher complaints, and they covered it up at every step. Ex. A at 13-14, 17, 21; Compl. ¶¶ 51-2, 55. They repeatedly, and intentionally, withheld information about Nguyen's concerning conduct and criminal convictions from the Saint Ann's community. Ex. A at 2-3, 8, 11, 14-15, 21, 26; Compl. ¶¶ 35-7, 54. When students and a teacher discovered that Nguyen had a criminal history through Google searches, Defendants lied about the nature of Nguyen's prior conviction. Ex. A at 9-11, 15; Compl. ¶ 56. Defendants engaged in a sustained campaign to stifle any concerns about

Nguyen's qualifications to teach, disregarding and shaming parents, teachers, and students who complained about Nguyen. Ex. A at 14, 26, 30-32; Compl. ¶¶ 54-7. And when Defendants learned that CSAM was circulating among the student body—abusive material they suspected was distributed by someone connected to Saint Ann's—they withheld that information from authorities and affected families. Ex. A at 33-34; Compl. ¶¶ 74-8. At every turn, Defendants put Saint Ann's reputation and purportedly progressive ethos over children's wellbeing. This is moral vanity, not morality, and it is exactly why courts award punitive damages.

**Defendants inflicted a public harm.** A primary consideration in awarding "the social exemplary remedy" of punitive damages is "the importance of the underlying right or public policy jeopardized by the tortfeasor's conduct," since "the more important the right at issue, the greater the need to deter its violation." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 128 (2d Cir. 2013). Defendants do not contest the importance of the public policy that their behavior "jeopardized." They could not: "The public policy of the state demands the protection of children from exploitation through sexual performances." *People v. Keyes*, 75 N.Y.2d 343, 346–47 (1990) (quoting the New York Legislature).

**Defendants are repeat offenders.** Punitives are particularly appropriate for repeat offenders: "our holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 577 (1996). The Complaint pleads exactly that recidivism. In 2018—just two years before Defendants hired Nguyen—Saint Ann's empowered a highly-publicized pattern of grooming: "The longtime head of Saint Ann's Middle School resigned in disgrace for hosting alcohol- and marijuana-fueled parties for students at his home." Compl. ¶ 22. The next year—right before Nguyen was hired—"outside investigators…

24

concluded that at least six former faculty members had engaged in 'sexual misconduct or serious boundary violations,' including having sex with students, while employed by Saint Ann's." *Id*. Until the School is punished for violating New York public policy and repeatedly enabling grooming and abuse, it will not be deterred. And the need for deterrence is strong since the danger is ongoing: "the School still operates as a school educating children from as young as kindergarten through eighth grade." *C.R.*, 248 A.D.3d at 12 (denying a motion to strike punitives).[10]

## VI. Judy Doe and Joan Roe are the proper plaintiffs.

Jane Doe is a minor and will be for at least another year. *See* ECF 6-2 (Decl. of Judy Doe, Jan. 29, 2026) at ¶ 4 ("My daughter, Jane Doe, is sixteen years old."). Since she cannot sue, her mother must sue for her, and is entitled to recover on her behalf. Fed. R. Civ. P. 17(c)(1)(A); *J.R. v. N.Y. City Dep't of Educ.*, 14-CV-392 (ILG) (RML), 2015 WL 5007918, at *1 (E.D.N.Y. Aug. 20, 2015). Joan Roe turned eighteen recently, so Plaintiffs are filing a motion to substitute under Fed. R. Civ. P. 17(a) in tandem with this Opposition.

## CONCLUSION

For all these reasons, this Court should deny Defendants' motion to dismiss on all counts.

Dated: July 1, 2026
    New York, New York

/s/                  
JOSHUA PERRY
VICTORIA RECALDE FELDMAN
BRITTANY HANKE
E. DANYA PERRY PLLC
445 Park Avenue, 7th Floor
New York, NY 10022
(212) 213-3070
jperry@danyaperrylaw.com

*Counsel for Plaintiffs*

---

[10] New York courts are reluctant to strike punitive damages before discovery. *See, e.g.*, *C.R.*, 248 A.D.3d at 11 ("Plaintiff's demand for punitive damages against the School was also properly sustained at this prediscovery stage of the litigation."); *Spira v. Nat'l Council of Young Isr.*, 231 A.D.3d 987, 989 (2d Dep't 2024) ("at this early stage in the litigation, it is premature to conclude that the allegations in the complaint were insufficient" to support punitives.).

## WORD COUNT CERTIFICATION

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing legal memorandum is within the word and page limits, and contains 8385 words and 25 pages, excluding the parts exempted from length limits by Rule 7.1(c).

Dated: July 1, 2026
New York, New York

/S/

JOSHUA PERRY
VICTORIA RECALDE FELDMAN
BRITTANY HANKE
E. DANYA PERRY PLLC
445 Park Avenue, 7th Floor
New York, NY 10022
(212) 213-3070
jperry@danyaperrylaw.com

*Counsel for Plaintiffs*